JOHN CAUBLE et al., Respondent, v. JAMES CRAIG, Appellant.

**St. Louis Court of Appeals, May 27, 1902.**

1. **Injunction: LICENSE TO OPERATE A FERRYBOAT.** Plaintiffs were licensed by the city of Cape Girardeau to operate a ferry from that city to the other side of the Missssippi river. Defendant, who had previously operated another ferry between the same points, under a similar license, continued to operate the same after his license expired: *held*, that injunction would lie to prohibit the further carriage of passengers, etc., from said city by the ferry of defendant, notwithstanding defendant had a license for such ferry from the county court of Cape Girardeau county.

2. **Cities of the Third Class: AUTHORITY TO LICENSE FERRYBOATS BETWEEN THE CITY AND THE OPPOSITE SHORE.** Cape Girardeau is a city of the third class, having authority to license and regulate ferries. A license issued by the county court

would not dispense with the necessity of a city license for a ferry between the city and the opposite shore of the Mississippi river.

3. **Ferry Franchise:** PROPERTY WHICH WILL BE PROTECTED BY INJUNCTION. A ferry franchise is property which will be protected by injunction, where a direct pecuniary loss ensues to plaintiff by the unauthorized and continuous operation of a rival ferry.

4 .**Constitutional Question:** HOW RAISED ON APPEAL. No constitutional question is available on appeal unless raised in the trial court in some appropriate way.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Robert L. Wilson* for defendant.

The appellant insists that the temporary injunction and the judgment making it perpetual was inconsiderately done. That defendant had not infracted any legal right or privilege of plaintiffs, and that the grant by the city of Cape Girardeau of a license to plaintiff to operate a ferry was an act *ultra vires.* The primary meaning of the word "ferry" in the English language is, to convey over narrow waters." No one thing contributed more to cause the abandonment of the Confederation and the adoption of the Federal Constitution than the contention between the States as to levying tonnage on cargoes passing over the large rivers. It took the infinite genius and patience of George Mason to prevent Virginia and Maryland, respectively, from resorting to arms to enforce tonnage duties on goods transported on the Potomac river. Section 8, article 1 of the Constitution of the United States, vested Congress with control of the navigable rivers within its borders and Congress has assumed control by passing navigation laws and licensing boats, and the exercise of that power has deprived the States of the right to interfere with boats or

Cauble v. Craig.

vessels plying on the navigable rivers. (2) "It is a tax or a duty that is prohibited; something imposed by virtue of sovereignty, not claimed in right of proprietorship. So in the case at bar the ordinance of the City of St. Louis does not exact the license fee on the ground of compensation for the use of its wharf, but it is for the privilege of towing boats, or other watercraft into or out of the harbor or from one place to another within said harbor." The license from the city of Cape Girardeau under which plaintiffs claim their privilege, is not contended to be a license for wharf privileges, but a license to navigate the Mississippi river from the Missouri shore to the Illinois shore. And the court held that the similar St. Louis ordinance was in violation of the Constitution of the United States, and the laws of Congress, and therefore invalid. St. Louis v. Consolidated Coal Co., 158 Mo. 342; Campbell v. Cramer, 96 Mo. 75; Carroll v. Campbell, 110 Mo. 557; Acts 1893, sec. 107, pp. 89, 90; State ex rel. v. Smith, 141 Mo. 1; Vansandt v. Hobbs, 153 Mo. 655; Harman v. City of Chicago, 147 U. S. 396.

*Frank E. Burrough* for respondent.

(1) The identical questions in controversy in this case have been determined in respondent's favor by this court and the Supreme Court, in cases arising at Cape Girardeau. Carroll v. Campbell, 25 Mo. App. 630; s. c., 108 Mo. 550; Carroll v. Campbell, 110 Mo. 557; Woods v. Campbell, 110 Mo. 572; State ex rel v. Cramer, 96 Mo. 75. (2) A county license can not authorize violation of city law. City of Kansas v. Flanders, 71 Mo. 281. (3) And where one applies for license, and is wrongfully refused, he has no protection. City of Kansas v. Flanders, 71 Mo. 281; State v. Jamison, 23 Mo. 630; State v. Meyers, 63 Mo. 324. (4) A city can pass special ferry ordinance. St. Louis v. Waterloo Co., 14 Mo. App. 216. (5) Such cities have power to license ferries.

Sec. 5857, R. S. 1899. (6) Damages, under ferry statute (sec. 7439, R. S. 1899.), is for the benefit of a city licensee as well as county licensee. Carroll v. Campbell, 110 Mo. 557. And, of course, if damages will lie, injunction will lie in such a case, on grounds of multiplicity of suits, and irreparable damages. Authorities unnecessary.

BARCLAY, J.—This suit is based upon a petition of plaintiffs (respondents) John Cauble and his wife against defendant (appellant) James Craig, brought in the Cape Girardeau Circuit Court seeking to enjoin defendant from running and operating a ferry for transporting passengers and freight across the Mississippi river from the city of Cape Girardeau to East Cape Girardeau in Illinois.

A temporary injunction was issued (June 21, 1901) which on trial in the circuit court was made perpetual.

The main features of the preliminary restraining order were to forbid defendant "from carrying passengers or freight from said city across said river to Illinois, for hire or for nothing," until defendant obtained a ferry license from the city of Cape Girardeau, etc.

It appeared by the evidence that on the fifteenth day of April, 1901, and until the injunction was made perpetual, respondents had a license from the city of Cape Girardeau to operate a ferryboat from said city to the Illinois shore, opposite said city.

On May 21, 1901, the clerk of the Cape Girardeau County Court issued a license to the Caubles to run a ferry across said river from Cape Girardeau to the Illinois shore.

It seems that the commissioners of Alexander county, Illinois, revoked and refused to grant a new ferry license to plaintiffs to operate a ferryboat from the Illinois shore across the river to the city of Cape Girardeau, and plaintiffs had no license from the commissioners of said Alexander county,

Illinois, at the time of application for said injunction, nor at the time said injunction was made perpetual.

Before and at the time of the application of plaintiffs for injunction, and when the same was made perpetual, Craig & Hartweg (under whom defendant claims) had a license from the commissioners of Alexander county, Illinois, to operate a ferryboat from East Cape Girardeau in said Alexander county, Illinois, across the Mississippi river to the city of Cape Girardeau.

On the twenty-sixth day of April, 1901, Craig & Hartweg had a license from the county of Cape Girardeau, Missouri, to operate a ferryboat from the city of Cape Girardeau, Missouri, to East Cape Girardeau, Alexander county, Illinois, and they had said license at the time of the application for said injunction and when the same was made perpetual.

Upon April 15, 1901, defendants had a license from the city of Cape Girardeau to operate a ferry from said city to East Cape Girardeau, Illinois, but said license expired on the last-named date. Thereafter, defendant had no ferry license from said city up to the time when the injunction was made perpetual.

Both boats of plaintiffs and defendant were duly inspected by the United States authorities, and had complied with the Federal laws on that subject.

On the fourth day of April, 1901, ten days before the expiration of the license granted to them to operate a ferry, defendant Craig and Mr. Hartweg presented a petition to the council of the city of Cape Girardeau, Missouri, praying that a new license be granted to them, which petition was accompanied by the required fees and a sufficient bond for the faithful performance of their duties as ferrymen.

The petition was by the council referred to a committee which reported that no license should be granted the applicants, Cauble and his wife, and that no license should be granted to Craig and Hartweg until the Illinois authorities

should grant a license to these plaintiffs. The city council adopted the report of said committee, and refused to grant a license to Craig and Hartweg.

The plaintiffs obtained the injunction against defendant after the term of the old city license of defendant expired.

Defendant appealed in due course from the final judgment of injunction after the usual motions and exceptions.

The foregoing outline of the case is taken, in the main, from the very fair statement prepared by the appellant.

1. No question under the Federal or State Constitution was raised in the trial court. So the appeal falls properly within the jurisdiction of this court.

It has been held by the Supreme Court very positively that no constitutional question is available on appeal unless it was raised in some appropriate way in the trial court. Bennett v. Railroad, 105 Mo. 642; Lang v. Callaway, 134 Mo. 491.

Whether or not, therefore, an exclusive privilege for a ferry at Cape Girardeau may be granted by that city, or whether that city's claim of right to license ferries is, in any respect, an infringement on the jurisdiction of Congress to regulate interstate commerce (within the meaning of the Supreme Court of the United States in the Gloucester Ferry Co. case, 114 U. S. 196, and in the Covington Bridge Co. case, 154 U. S. 204) are questions not before us.

2. The substance of the whole controversy as presented by this record is that plaintiffs have duly obtained the proper license to operate a ferry from the city of Cape Girardeau, and the defendant having no such license from that city has been enjoined from carrying passengers or freight by his ferryboat from said city, without that license.

Cape Girardeau is a city of the third class. Its charter declares that the council shall (among other things) have power and authority "to license ferries, and to regulate the

same and the landing thereof within the limits of the city." R. S. 1899, sec. 5857.

Another part of the charter provides that "all license tax shall be regulated by ordinance." R. S. 1899, sec. 5823.

An ordinance regulating ferries has been duly enacted by the council of the city. The first section of that ordinance declares that:

"No person or co-partnership of persons shall keep a ferry within the limits of this city, so as to demand or receive pay for transporting persons or property across the Mississippi river, or use in any way the wharf or shore of said river as a ferry landing, without a license therefor; and every person who shall violate the provisions of this section shall be deemed guilty of a misdemeanor."

The ordinance also provides that:

"Any person who shall desire to keep a ferry within the limits of this city shall petition the mayor and council for a license therefor, setting forth in the petition the number and kind of boats intended to be employed, the length of time for which license is wanted, and the place where such ferry is designed to be kept."

Further sections of the ordinance authorize the mayor and council (by ordinance) to direct a license to issue and to prescribe the license fee to be paid for each six months.

Then follow a number of provisions in regard to the renewal of licenses, giving of bond for the faithful performance of duties imposed by the ordinance, and a variety of regulations intended to provide safe transportation of passengers and vehicles and to limit the charges for such service.

None of these features is important in its bearing on the case at bar.

Defendant contends that the granting of a ferry license (in the manner indicated by the ordinance) to each applicant, is a violation of the fundamental law prohibiting special legislation and the granting of exclusive privileges.

One answer to that contention must be that it involves constitutional questions which were not raised in the circuit court and which can not be effectively raised now, under the Missouri decisions above cited. Furthermore, the city license of plaintiffs does not purport to be exclusive.

3. On the general merits of the case, there can be no doubt, at this day, that the right to enjoy a ferry franchise is property, the full use of which the courts will protect by appropriate remedies, one of which is by injunction, where (as here appears) a direct pecuniary loss ensues to plaintiff by the unauthorized and continuous operation of a rival ferry. Carroll v. Campbell, 108 Mo. 551; Capital City Ferry Co. v. Transp. Co., 51 Mo. App. (K. C.) 228; Mayor v. Starin, 106 N. Y. 1; McInnis v. Pace, 78 Miss. 550.

4. The fact that defendant had obtained a ferry license from the county court of Cape Girardeau county under the terms of section 7426 (R. S. 1899), is no obstacle to the relief which plaintiffs seek. The want of a city license would not be cured by a license issued from any other authority in the existing condition of the law on that subject. Simpson v. Savage, 1 Mo. 359; Harrison v. State, 9 Mo. (orig. ed.) 530 (reprint) 526.

5. There is no showing to convince us that the defendant has obtained the proper license to operate a ferry for transferring passengers, etc., from the city of Cape Girardeau to the opposite shore of the Mississippi river, and under the rulings of the Supreme Court in State ex rel. v. Cramer, 96 Mo. 75; Carroll v. Campbell, 108 Mo. 550; Carroll v. Campbell, 110 Mo. 557, plaintiffs are entitled to the protection of their franchise which the trial court accorded to them.

6. Constitutional questions being out of the case, there is little left to discuss on this appeal. The last group of Missouri decisions above cited appear decisive of every issue properly before us.

The judgment is affirmed. *Bland, P. J.,* and *Goode, J.,* concur.