STATE ex rel. HEDGE McCLANAHAN, Respondent, v. W. H. W. DeWITT et al., Appellants.

Kansas City Court of Appeals, December 4, 1911.

**MANDAMUS: County Courts: Billiard and Pool Halls.** The county court was petitioned by plaintiff to grant him a license to conduct a pool hall in a city of the fourth class. A remonstrance having been filed, the court refused the license. Upon application the circuit judge issued an alternative writ of mandamus directed to the county judges, who attacked the sufficiency of the petition by motion to quash. This motion having been overruled, they stood on their motion and when the writ was made peremptory, appealed. *Held*, that as county courts are, by statute (Section 1193, Revised Statutes 1909), empowered to license billiard and pool tables, in the exercise of such power they are vested with the discretion to refuse to license for cause.

Mandamus.

Appeal from Sullivan Circuit Court.—*Hon. Fred Lamb*, Judge.

REVERSED.

*J. M. Wattenbarger* for appellants.

*Earl F. Nelson* and *A. G. Knight* for respondent.

BROADDUS, P. J.—The respondent McClanahan petitioned the county court of Sullivan county for a license to conduct a pool hall in the city of Milan. The appellants are the judges of said court. A remonstrance was filed asking the court to deny the application and refuse the license. The appellants acting in their official capacity denied the application of the relator, the respondent herein. The respondent afterwards applied to the judge of the circuit court of the county for a writ of mandamus to compel the county court to issue such license, whereupon said judge issued an alternative writ of mandamus returnable to the first day of the regular term of the circuit court of the county. On the return day of the writ the appellants filed a motion to quash on the ground of the insufficiency of the petition. The motion was overruled and as appellants stood on their motion the writ was made peremptory. The judges appealed.

The question is not as to the form of the pleadings, but goes to the right of the county court to deny the respondent the license prayed for in his application, which involves a construction of chapter 14, volume 1, Revised Statutes 1909, entitled, "Billiard and other Tables." Section 1193 provides that the county court "shall have power to license the keepers of billiard tables, pigeon hole tables, Jenny Lind tables, and all other tables kept and used for gaming, upon which balls and cues are used. At each term, the clerk of said court shall prepare and deliver to the collector of their counties as many blank licenses for the keepers of such tables, hereinbefore mentioned, as the respective courts shall direct, which shall be signed by the clerk and attested by the seal of the court." Section 1194 provides that the collector of the county

"shall deliver to any person who shall have been licensed, a license to keep any such table . . . . upon the payment by the applicant" of the amount of the license fee which is fixed at twenty dollars for twelve months' time, etc., "and the collector shall countersign such license before delivering the same to the applicant. Section 1196 gives to "The state, county, city or town, as the case may be,", a lien upon such tables mentioned in section 1193, "and if the owner or keeper thereof shall fail or refuse to pay to the respective collectors or other persons authorized to collect the same, the amounts of the licenses due the state, county, city or town, within ten days after such table is set up" the collectors are authorized to seize such tables and sell the same at public auction to pay the amount of the licenses. Section 1200 provides for a penalty against every licensed keeper of such table who shall suffer any minor under twenty-one years of age to play on such table, without the permission of his parents or guardian, as the case may be. Section 1197 provides that the county collector shall be charged with the blank licenses delivered to him for which he is required to account and for each blank that he fails to return he shall pay fifty cents to the clerk. Section 1202 requires that: "Every licensed keeper of one or more of such tables mentioned in section 1193 shall post up in the room where the same is placed one or more placards, having section 1200 conspicuously written . . . thereon," etc.

It is insisted by respondent, the applicant, that said sections are to be construed with reference to section 9399, article 5, Revised Statutes 1909, entitled, "Cities of the fourth class" to which class the city of Milan belongs. This section provides that: "The mayor and board of aldermen shall have the power and authority to regulate and to license, and to levy and collect a license tax on . . . billiard and pool tables and other gaming tables," etc. The subsequent

part of the section gives them the power to suppress such tables and also other occupations mentioned. The different sections relating to the same subject and found in the same revision must for the purpose of construction be regarded as *in pari materia*. It is contended that the legislature cleary distinguished between the power to regulate and the power to suppress or prohibit. This may be true as to cities of the fourth class to suppress, or else there would have been no necessity for conferring in a different part of said section, after having conferred the power to regulate and license, also the power to suppress. The respondent treats the word suppress as synonymous with that of prohibit. If the power is conferred upon a city of the fourth class to prohibit billiard and pool tables. and it elects to exercise it, its action would deprive the state and county of its revenue derived from the tax on billiard and pool tables for no one would apply for a license and be willing to pay the tax knowing he could not conduct the business. Therefore, the argument of respondent that the authority to license is only a mode provided by the legislature for the collection of revenue seems to lack force.

It is clear that the legislature in the use of the word suppress meant to confer on the city the power as a police regulation to suppress unlicensed billiard and pool tables and the like doing business without a license, but it was not intended that the city should have the power to prohibit billiard and pool tables, occupations which the state had a right to at least license and tax. In the act authorizing the county courts to license such occupations the state reserved to itself the right to regulate in part as provided in section 1200, and as to other matters left the power to the cities as provided in said section 9399. It seems to us the question does not involve the power of the county court to regulate, suppress or prohibit billiard or pool tables, but the right to refuse to license them.

It seems plain to us that the county court in refusing to license the applicant was not attempting to regulate, suppress or prohibit such tables, but it was exercising a discretionary power. The power to license necessarily implies in this instance the power to refuse to license. We understand that the county court has no discretion in certain cases to refuse occupation licenses where proper application is made. For instance, in useful occupations. Keepers of billiard and pool tables are not useful occupations. [City of Tarkio v. Cook, 120 Mo. 1.] Section 1200 of the act is a distinct recognition by the state that it is also a harmful occupation, and that persons under twenty-one years of age are not permitted to play the game except under certain restrictions. Billiard and pool tables, it is said, "are regarded by many as vicious in their tendencies, leading to idleness, gambling and other vices," and as such we regard it. [City of Tarkio v. Cook, supra.]

As we have seen, the occupation cannot be carried on in this state except it be licensed to do so. The theory of respondent is that the court not only may but must issue the license when applied for, as the applicant has a lawful right to it which the court is not authorized to withhold for any reason. That the duty of the court is merely perfunctory. The same reason would apply to the right of a city to refuse license. As the right to regulate and suppress are only powers of police regulation it does not go to the question of the right to license. We believe the law lodges in the county court the discretionary power to refuse such licenses when in their opinion there are reasonable grounds to apprehend that the person applying is not a suitable person or the place is not suitable for the carrying on of the business. For instance, the applicant may be an habitual law breaker or grossly immoral, or the place may be near to a

church or school building, or private dwelling, which would constitute it a nuisance.

It seems to us that there is a material distinction in the power to refuse license in a given case for cause, and to prohibit licenses altogether. And we agree with what Judge Cooley said that, the power to prohibit cannot be exercised in the absence of an express grant, People v. Grant, 121 N. W. 300, and what was said by Judge Ellison that: "Under, power conferred on cities of the fourth class to regulate and to license dramshops, there is no authority to wholly suppress or prohibit. Where there is mere power in a municipality to regulate in a state, with a general policy of conducting licensed saloons, authority to prohibit is excluded. The difference between regulation and prohibition is clear and well marked. The former contemplates the continuance of the subject-matter in existence or in activity. The latter implies its entire destruction or cessation." [Smith v. McCammon, 111 Mo. App. 626.] There can be no question but what the general policy of the state is to license billiard and pool tables and that there is no power vested in either the county or the city to prohibit them, but a city may suppress and there is nothing in the decision to warrant any other conclusion and it was clearly not the intention of the court to use the words suppress and prohibit as synonymous.

In State ex rel. v. Berryman, 142 Mo. App. 373, the question arose as to the right of the city council of a city of the third class to refuse to license a saloon as provided by section 5857, Revised Statutes 1899, as amended by the act of 1907, which reads as follows: "The city council shall have power and authority to levy and collect a license tax on beer depots or storerooms, . . . liquor sellers, etc.; and to license, tax, regulate or suppress ordinances, money brokers, money changers, intelligence and employment houses, fortune tellers, . . . billiard tables, pool or other

tables," etc. The court held that as to the first group the council had only the power to levy license tax. The court followed the holding in St. Louis v. Ins. and Trust Co., 47 Mo. 150, in speaking of a similar statute where it is held that: "These provisions, contained in the same section, abundantly show that the mind of the lawgiver was directed to the subject, and that the power to tax was given where it was intended to be exercised, and that it was withheld where it was not so expressed."

The distinction made by the Court of Appeals was proper. As the city had no power to license there was nothing for the council to do but to impose a license tax. Whereas, section 1193 provides that the county court "shall have the power to license" and also to tax billiard and pool tables. And we believe that in the exercise of such power it is vested with the discretion to refuse such license for cause. Therefore, the cause is reversed. All concur.