THE STATE OF MISSOURI at the Relation of CHARLES WAGNER and WALKER FICKLIN, Relators, Respondents, v. VICTOR FIELDS, Mayor, and JAMIE NORMAN, A. E. WALKER, J. C. KINSLOW, CLARENCE SHISLER, Z. Z. DUNCAN, A. P. LAUGHLIN, SAMUEL ALLEN, HENRIETTA McCASLIN, Members of the BOARD OF ALDERMEN OF STANBERRY, MISSOURI, a Municipal Corporation, Respondents, Appellants.*

Kansas City Court of Appeals. June 16, 1924.

1. MANDAMUS: Pleading: Alternative Writ Functions as Basic Pleading, While Return Constitutes the Answer. In mandamus the alternative writ functions as the basic pleading in the case, occupying a position corresponding to the petition in an ordinary case, while the return takes the place of and constitutes the answer.

2. ———: ———: Motion for Judgment on Pleadings Operates as Demurrer to Return and Admits Truth of Allegations Sufficiently Pleaded. In a proceeding to compel issuance to relators of a

State ex rel. v. Fields et al.

license to operate a pool hall, where relator filed a reply denying facts alleged in the return, and without withdrawing reply, filed a motion for judgment on the pleadings, the motion operated in nature of demurrer to return and admitted the truth of every allegation sufficiently pleaded, but not conclusions of law.

3. ———: ———: Motion for Judgment on Pleadings Held to Have Effect of Withdrawal or Abandonment of Reply. In proceeding to compel issuance of a license to operate a pool hall, where after relators filed reply to return of alternative writ they filed a motion for judgment on the pleadings, held the motion had the effect of a demurrer and operated as a withdrawal or abandonment of reply.

4. ———: ———: Issuance of Peremptory Writ to Compel Issuance of License for Pool Hall on Motion for Judgment On Pleadings Held Erroneous. Section 9645, Revised Statutes 1919, giving county courts power to license and tax billiard tables "in their respective counties," section 8497 giving cities of the fourth class power to regulate, license, levy and collect a license tax on such tables, or suppress the same, and section 8469, committing the management and control of a city, to the authorities thereof, where a city was asked for a license to operate pool and billiard tables, it may consider the facts, and relators in applying for a license had no right to a peremptory mandamus on motion for judgment on the pleadings where return stated that a license had not been refused but that action thereon had only been postponed to a certain date.

5. WORDS AND PHRASES: To "Regulate" Defined. To "regulate" means "to adjust, order, or govern by rule, method, or established mode; direct or manage according to certain standards or laws; subject to rules, restrictions or governing principles."

6. LICENSES: Taxes: Pool Rooms: Regulation: City Held Not Required to Issue License to Keeper of Billiard and Pool Tables Because License Had Been Issued Therefor by County Court. Section 9644, Revised Statutes 1919, conferring power on a county to license keepers of billiard tables, and section 9645, showing that purpose of said section is the taxing of said tables, and section 8497, giving cities of fourth class power to regulate and license billiard and pool tables, instead of keepers thereof, does not require a city to perfunctorily issue its license to parties to whom a license had been issued by county court, regardless of the circumstances.

7. ———: Poolrooms: Regulation: City of Fourth Class May Refuse for Reasonable Cause Issuance of License for Billiard and Pool Tables. Under Section 8497, Revised Statutes 1919, authorizing cities of fourth class to regulate and license billiard and pool table,

State ex rel. v. Fields et al.

a city may refuse to issue a particular license to a particular applicant or applicants for reasonable cause, the power to license implying the power to refuse a particular license for cause.

8. ———: Res Adjudicata; Granting of Pool Hall License by County Court Held Not Res Adjudicata of Question as to Whether City Shall Grant License. Action of county court in granting license. for a pool hall as provided by section 9644, Revised Statutes 1919, *held* not *res adjudicata* of questions involved in the matter of whether city shall grant its license in accordance with section 8497 to licensees to conduct a pool hall, the judgment of county court having been upon an *ex parte* proceeding and not under conditions necessary to the creation of the status of *res adjudicata*.

9. ———: License from County Court to Operate Pool Hall Does Not Dispense With the Necessity of City License. A city license is a necessary prerequisite to operate a pool or billiard hall in the city, and if a license from county court is obtained as required in section 9644, Revised Statutes 1919, this does not dispense with the necessity of the city license.

10. MANDAMUS: Indefiniteness of Alternative Writ as to Location of Pool Hall, and Failure to Mention Location in Return Does Not Prevent Its Consideration in Determining Whether Writ Shall Issue. Under section 8497, Revised Statutes 1919, authorizing cities of fourth class to license pool halls, mandamus being sought to compel issuance of license, *held* that although alternative writ did not specify with particularity the location of proposed poolroom such fact would be considered, regardless of failure of respondent's return to mention it, since court is not bound to take case as presented, but may consider respondents' rights, the interest of third persons, and other matters in determining whether the writ shall go.

11. ———: Where Peremptory and Alternative Writs Were Issued on Premature Application the Same Will be Quashed and Proceedings Dismissed. In a proceeding by mandamus, to compel city authorities to issue a license to operate a pool or billiard hall, where re· lators applied for an alternative writ before it was known what action the city would take and before time or opportunity was given the city to consider the application and act, the peremptory . and alternative writs will be quashed and proceeding dismissed.

*Headnotes 1. Mandamus, 38 C. J., Sections 575, 599; 2. Pleading, 31 Cyc., p. 606; 3. Pleading, 31 Cyc., p. 606; 4. Pleading, 31 Cyc., p. 608; 5. Regulate, 34 Cyc., pp. 1029, 1030; 6. Licenses, 37 C. J., Section 97; 7. Licenses, 37 C. J., Section 97; 8. Licenses, 37 C. J., Section 92; 9. Licenses, 37 C. J., Section 96; 10 Mandamus, 38 C. J., Section 680; 11. Mandamus, 38 C. J., Section 54.

Appeal from the Circuit Court of Gentry County.—*Hon. A. M. Tibbels,* Special Judge.

REVERSED AND REMANDED (*with directions*).

*Cook & Cummins, E. C. Lockwood* and *W. J. Judd* for appellants.

*McCaffrey & Cook* for respondents.

TRIMBLE, P. J.—Mandamus, brought in the circuit court of Gentry county, Missouri, on December 10, 1923, against the Mayor and Board of Aldermen of the city of Stanberry, Missouri, to compel them to issue to relators a license to operate pool and billiard tables in said city.

The alternative writ was issued on said date, reciting that whereas it had been represented to the court "as set forth in a certain petition for a writ of mandamus, a copy of which petition is hereto attached," and, the court being willing that due and speedy justice be done, respondents were commanded to "issue a license" to relators "to operate and maintain five pool and billiard tables in Stanberry, Missouri, for a period of one year from December 4, 1923," or show cause why they should not do so.

Treating the petition attached to the alternative writ as a part thereof, said writ sets forth that respondents are, respectively, Mayor and members of the Board of Aldermen of Stanberry, a city of the Fourth class; that on December 4, 1923, at a regular meeting of the board, the relators presented their petition and application "for license to operate five pool tables and one billiard table for a term of one year in said city and on the first floor of a two-story brick business building located in said city, and tendered to said Mayor and said Board of Aldermen the necessary license fee therefor; but said Mayor and said Board of Aldermen, arbitrarily

and without cause, refused to issue said license to relators.

"Relators say that they are fit and proper persons to operate said pool and billiard tables, and the place and building where they propose to operate and maintain said pool and billiard tables is a fit and proper place.

"Relators say that prior to their application to respondents herein for said license, they had issued to them a State and county license, as provided by law, to operate and maintain said pool and billiard tables at said place, and had and have a large amount of money invested in equipment necessary in the operation and maintenance of said pool and billiard tables.

"Relators say that the refusal of respondents to issue to them a license was without cause and arbitrary.

"Relators say that they have no adequate remedy at law and will be without relief unless the relief herein prayed for be granted to them.

"Wherefore, relators pray this Honorable Court to issue against the said . . . as Mayor and . . . as members of the Board of Aldermen . . . a writ of mandamus commanding them to issue to relators a license to operate and maintain five pool and one billiard table, from a period of one year from the said fourth day of December, 1923, in the city of Stanberry, Missouri," etc.

The return to the alternative writ set up that relators ought not to have a peremptory writ of mandamus, because—

"The respondents, as mayor and members of the board of aldermen of the said city of Stanberry, have not refused to relators a license to operate five pool tables and one billiard table in the city of Stanberry, as alleged in the petition of relators herein, but aver the facts to be that:

"At a regular meeting of the board of aldermen of the city of Stanberry, held in said city on the 4th day of December, 1923, the relators, with their attorneys, McCaffrey and Cook, appeared before said mayor and

board of aldermen and presented their application for a license from the city of Stanberry to operate five pool tables and one billiard table in said city for the period of one year, and presented with said application a license theretofore issued to them by the county court of Gentry county, Missouri, and tendered to the city clerk the fees for such license as required by the city ordinances of the city of Stanberry, as alleged in their petition herein.

"That thereupon one, Wray Besinger, made oral objection to the granting of said license by the city of Stanberry, alleging, among other things, that the relators were not fit persons to conduct a pool hall, that minors had been permitted to play in said pool hall as theretofore conducted and the said pool hall had not been properly conducted in other respects.

"The relators offering no proof of their fitness to conduct a pool hall, it was moved by Councilman Norman and seconded by Councilwoman Henrietta McCaslin, to postpone the hearing on the application for license to December 11, 1923, and if license was then issued, to date back to December 4, 1923. Said motion being put was duly carried.

"Thereafter, on the 11th day of December, 1923, the board of aldermen of the city of Stanberry met pursuant to adjournment of December 4, 1923, the mayor and all members of the board of aldermen being present, for the purpose of hearing the application of relators, Wagner and Ficklin, for license to keep pool and billiard tables in the city of Stanberry and a remonstrance against said application. The city clerk then read to the board of aldermen the formal remonstrance in writing against the granting of said application, theretofore filed with him on the 10th day of December, 1923, which said remonstrance . . . is in words and figures as follows, to-wit:

" 'To the Honorable Mayor and Board of Aldermen of the city of Stanberry, Missouri:

" 'We, the undersigned citizens of Stanberry, Missouri, hereby protest against the city of Stanberry granting the application of Wagner and Ficklin for a license to operate pool hall in the city of Stanberry, Missouri; and for our grounds of protest state that the applicants are not proper persons to operate and conduct a pool hall, for the following reasons:

" 'First. That the pool hall for which license is requested, as it has been heretofore and is now conducted, has been and is a habitual loafing place for large numbers of minors, and as such it inculcates and encourages idleness, bad habits and disrespect for law among the boys and young men of the community.

" 'Second. That the proprietors and patrons of said pool hall habitually indulge in loud, profane and indecent language in said pool hall, to the annoyance and disturbance of people passing and in adjoining premises.

" 'Third. That one of said applicants, Walker Ficklin, is addicted to the habitual use of intoxicating liquors to excess, and at such times is loud, boisterous and profane in his language and conduct.

" 'Fourth. That persons have been permitted to stay in said pool hall while intoxicated, and have been given refuge there to avoid arrest by the City Marshal.

" 'Fifth. That minors have been permitted to play on the tables in said pool hall without the permission of their parents and guardians, and in violation of law.

" 'Signed:

| | |
|---|---|
| J. H. Besinger, | Sarilda Cranor, |
| Wray Besinger, | A. A. Reynolds, |
| Florence Noel, | Alice C. Reece, |
| Cuma Besinger, | Ada Moore, |
| W. O. Garner, | J. I. Reece, |
| James A. Martin, | Rose Reece, |
| H. J. Wiseley, | Golda Stafford.' "|

The return further set that the city clerk—

"Mailed a copy of the remonstrance to McCaffrey & Cook, Maryville, Missouri. The relators herein, Wag-

ner and Ficklin, made no appearance at said meeting of the Board of Aldermen held on the 11th day of December, 1923, but defaulted.''

The return further set up that on the day before the Board of Aldermen were to meet pursuant to adjournment, to-wit: on December 10, 1923, relators applied for and obtained the alternative writ, and at the meeting of the board held on December 11th, to which the board had adjourned, relators did not appear; and it appearing to the board that the writ of mandamus had been applied for and obtained, returnable on the 20th of December, 1923, it was deemed that further proceeding should be stayed until the court could hear said matter, wherefore the Board of Aldermen had continued the hearing of said application for a license until the next regular meeting of the board to be held on January 1, 1924.

The return further set up that—

''By the provisions of section 8497 of the Revised Statutes of Missouri 1919, governing cities of the fourth class, the said Mayor and Board of Aldermen, respondents herein, have power and authority to license, tax, regulate or suppress billiard tables, pool and other gaming tables within the corporate limits of the city of Stanberry, and that said statutes confer upon these relators the power to refuse such license for cause shown; that the remonstrance lodged against the application of relators for such license, and filed with the city clerk as heretofore set forth, sets forth good cause for refusing such license to relators, if found by the Board of Aldermen on hearing had thereon, to be true; that as against said remonstrance the relators herein have offered no proof that they are fit and proper persons to operate pool and billiard tables in the city of Stanberry; that these respondents aver that they are ready and willing to hear said application for license if again presented on the first day of January, 1924, as set forth in the record of their proceedings as the Board of Aldermen of said city, held on the 11th day of December, 1923; that the discretion given by law to these respondents to hear

said application and the remonstrance lodged thereto, and the testimony in support of said application and against the same, and to grant or refuse said application as in the judgment of respondents, sitting as the Board of Aldermen of Stanberry, may warrant, is a judicial discretion, beyond the control of this court, and in the exercise of their judgment thereon they can not be controlled by the writ of mandamus.

"Wherefore, these respondents pray that the peremptory writ of mandamus be denied, that the alternative writ heretofore issued in this cause be quashed," etc.

Relators filed a reply to the return denying "each and every allegation" in the return and saying that they—

"Specifically deny that after having presented their application for a pool and billiard license to respondents herein on the —— day of December, 1923, they withdrew said application, as alleged in respondents' return.

"Relators deny, . . . that action on such application was postponed until a subsequent date . . . but aver the fact and truth to be that upon the presentation of said application . . . for an alternative writ of mandamus, it was . . . arbitrarily and without cause refused and such action by these respondents was noted by the clerk of these respondents on a sheet of paper and so remains, unless changed and altered by these respondents."

Thereafter, and on the same day the reply was filed, relators also filed a "Motion for Judgment" asking the court "to enter judgment issuing the peremptory writ of mandamus in their behalf, as prayed for by them herein, and for reasons in this behalf state: That the matters and things set forth in respondents' return . . . constitute no defense and the return shows on its face no legal, valid or just cause why such writ should not be made peremptory."

Thereafter respondents filed a motion to strike out said "motion for judgment," on the ground that it was

filed after the relators had filed a reply to the return of respondents to the alternative writ, making said cause at issue. This motion to strike out was by the court overruled, respondents excepting thereto.

The court then sustained relators' ''motion for judgment on the pleadings'' and issued the peremptory writ commanding respondents ''to immediately and forthwith issue to Charles Wagner and Walter Ficklin a license to operate and maintain a pool hall in the city of Stanberry, Missouri, at the place designated in their said application and that they fail not at their peril,'' etc.

Thereupon, respondents appealed.

In mandamus, the alternative writ functions as the basic pleading in the case, occupying a position corre-sponding to the petition in an ordinary case, while the return takes the place of and constitutes the answer. Analyzing the pleadings then, they are in this shape:

Relators ask a peremptory writ of mandamus against the governing body of the city, alleging that they applied to respondents for a license and that they ''*arbi-trarily and without cause refused* to issue said license;'' that they are *fit and proper persons* to operate said pool and billard tables and the place where they propose to operate them is a *fit and proper place,* and that they have a State and county license.

The return, in answer thereto, denies that respondents have refused to issue a license, but avers that re-lators merely presented an application for a city license, accompanied by a license granted by the county court; whereupon, oral objection being made on the ground that applicants were not fit persons to conduct a pool hall, that minors were allowed to play in their hall as theretc-fore conducted, and that said hall had not been properly conducted in other respects, the hearing on the applica-tion was postponed to December 11th, whereupon, ap-plicants obtained the alternative writ without making any effort to show that they were fit persons or that the

place was a fit place to keep a hall, *both* of which things *they had alleged in their application,* and without waiting for the action of the Board of Aldermen on the application.

The return, further answering, shows that on December 11th, the day to which the hearing of the application was postponed, a formal remonstrance was presented setting forth specific reasons remonstrators had for objecting to the granting of the license applied for; that applicants for the license made no appearance at this meeting, and, as they had applied for a writ of mandamus, returnable on the 20th of December, the matter was further postponed to January 1, 1924, to give the court opportunity to hear said mandamus; and that respondents are willing to hear said application for license if again presented.

To this, relators filed a reply denying the facts therein alleged, and then, without withdrawing their reply, filed a motion for judgment on the pleadings. This motion is, in substance and effect, a "motion for the peremptory writ to issue notwithstanding the return, and therefore operates in the nature of a demurrer to the return, and admits the truth of every allegation thereof which is sufficiently pleaded." [State ex rel. v. Smith, 104 Mo. 661, 666. See, also, State ex rel. v. Adams, 161 Mo. 349, 362; State ex rel. v. Higgins, 84 Mo. App. 531, 534.] Of course, such admission does not include conclusions of law and matters not well pleaded.

The question then is, in this state of the pleadings are the relators entitled, as a matter of law, to the peremptory writ? We do not think this question is vitally affected by the fact that relators filed a reply and thereafter filed a demurrer; for while it is true that an answer and a demurrer, going to the entire case, cannot both stand at the same time, yet we may regard the subsequent filing of the demurrer as a withdrawal or an abandonment of the reply. [State ex rel. v. Bright, 224 Mo. 514, 523-4.] But when this is done, in what shape

is the case left? Relators' case stands on an alternative writ alleging that they are fit and proper persons to be licensed and that the place where they propose to keep the hall is a fit and proper place but that the city authorities have arbitrarily and without cause *refused* to grant them a license. The return *denies* that they have refused to grant the license and shows that they only *postponed* the matter to a certain date, and that relators, without further effort or appearance, hurried off and obtained an alternative writ. Under these circumstances, are they entitled to the peremptory writ? Mandamus is a stern, harsh writ, and, when issued, is an unreasoning, inflexible, peremptory command to do a particular thing therein specified without condition, limitation, or terms of any kind. It is not a writ of right to which relators are entitled without regard to the circumstances under which they are demanding its use. Whether it shall be granted or refused rests in the judicial discretion of the court, applied to the situation before it and governed by certain principles and rules of law. If there is a doubt of the necessity or propriety of the peremptory writ, it will not go. [State ex rel. v. Lyons, 173 Mo. App. 589, 593, 594.] Mandamus "is a discretionary writ—issuing only in the exercise of a sound (i. e., judicial) discretion. It will issue to coerce action but not to regulate or control a discretion reposed by law in an official while acting. The thing the writ is aimed at is the performance of a ministerial duty 'imposed by law.' . . . A litigant asking relief by mandamus must allege and prove that he has a clear, unequivocal, specific right to a thing claimed. He must show himself possessed of a clear and legal right to the remedy." [State ex rel. v. Hudson, 226 Mo. 239, 265.]

Without regard, therefore, to the question of the city's lack of power to *prohibit* the operation of pool and billiard tables, and passing for the moment the question of whether the city can *refuse* a license *for cause,* it would seem that the peremptory writ should not have issued

under the circumstances herein disclosed, namely, a motion for judgment on the pleadings which, as stated, is a demurrer. For, conceding, for the sake of the argument (and for no other purpose at present), that whenever a pool and billiard license has been granted by the county court, the city *must* grant its license and cannot refuse to grant a license even for cause, still the city would have the right to prescribe *regulations* under which the license should be granted and the pool and billiard hall should be operated. The State, in addition to permitting the county court to license and tax such tables, has also conferred that power on cities of special charter as well as those of the fourth class. [Secs. 9654 and 8497, R. S. 1919.] The former gives cities under special charter the power "to license, tax and *regulate*" billiard and pool tables, and the latter gives cities of the fourth class power "to *regulate* and to license, and to levy and collect a license tax" on billiard and pool tables . . . and "to license, tax, *regulate* or *suppress* billiard tables, pool and other gaming tables." This is a broader power than that given to the county court, for the statute conferring the power on the county court to license says nothing about regulation or suppression, nor of power to revoke the license. To "regulate" means "to adjust, order, or govern by rule, method, or established mode; direct or manage according to certain standards or laws; subject to rules, restrictions or governing principles." [New Standard Dictionary.] Hence the city in granting a license would, even on the theory now conceded for argument's sake, have the right to consider the regulations and restrictions to be placed about the license and the business to be operated, including the qualifications of those operating it and the place where it was to be carried on. It would seem that relators impliedly concede this in their pleading for they allege that they are fit persons and that the place where they propose to conduct the pool hall is a fit and proper place. The county court's license does not call for any particular place to operate tables, but, as the

statute says, ''in their respective counties.'' [Sec. 9645, R. S. 1919.] In other words, the license from the county court merely gives the State's and county's permission and authority to operate pool and billiard tables anywhere in the county, and the *regulation* of same at any particular city therein is left to the authorities thereof under the power granted to them to ''regulate and to license, and to levy and collect a license tax'' on billiard and pool tables, and to ''license, tax, regulate or suppress'' billiard and pool tables. And to these authorities the State has committed the management and control of the city, with the power to make such regulations as they may deem expedient for the government, preservation of peace and good order of the city and the maintenance thereof, not inconsistent with the constitution and laws of the State. [Sec. 8469, R. S. 1919.] So that even upon the theory that the city could not absolutely refuse a license when once the county court has acted, we are of the opinion that under the pleadings as they now stand, the right to a peremptory mandamus could not be invoked by demurrer or, which is the same thing, by a motion for judgment or the pleadings.

But we are unwilling to dispose of the case upon this narrow ground, especially as respondents in their return have asserted that under section 8497, Revised Statutes 1919, they have power to *refuse* the license *for cause* and that the remonstrance states good cause, and both sides have fought out the case on this point, and it may be the real point in controversy.

We cannot accept relators' view that when once the county court, in an *ex parte* proceeding, has granted a license, then all the city can do is to perfunctorily, and as a mere matter of course, accept the situation and issue its license to the same parties regardless of the circumstances, the character of the licensees, the place in the city where the tables are to be kept, or the effect on the peace, quietude and good order of the city. We say ''*ex parte*'' proceeding, for the statute makes no requirement

for notice to be given and, of course, where none is required none will be given.

A glance at the statutes conferring power on the city reveals that manifestly the city is given more than the mere power to follow parrot-like the example and course of the county court. If section 8497 meant merely to authorize the city to levy a tax through the medium of a license, i. e., a mere city-revenue power only, why did it give the city "power to regulate *and* to license" pool and billiard tables, and then say "and to levy and collect a license tax" on them? And why did it then go still further and confer power on the city "to license, tax, regulate or suppress" them?

The fact that section 9644, Revised Statutes 1919, gives the county court "power to license the *keepers* of billiard tables," etc., while section 8497, Revised Statutes 1919, gives the city "power to regulate and to license" billiard and pool *tables*, etc., instead of the keepers thereof, is without significance. It is merely a matter of different phraseology used in dealing with the same general subject. The next section, section 9645, Revised Statutes 1919, shows that the object and purpose of the statute is the taxing of the *tables* that are to be kept; while evidently in section 8497 the power to regulate the *tables* is not the idea but it is the keeping and *keepers* of the tables that are to be regulated.

In the case before us, we are not dealing with the question of the power of either the county court or the city to *prohibit* pool halls; nor are we concerned with the question whether the words "prohibit" and "suppress" are synonymous terms. It may even be conceded that they are not. [State ex rel. v. McCammon, 111 Mo. App. 626.] The question is rather, can the city *refuse* to issue a particular license to a particular applicant or to applicants, *for reasonable cause?* We think they have that power, and that there is nothing in the cases cited by relators announcing a contrary rule. The city is granted the power to license; and the power to license

implies the power to *refuse* a particular license *for cause.* [State ex rel. v. Dewitt, 160 Mo. App. 304; State ex rel. v. Adair County Court, 177 Mo. App. 12; State ex rel. v. County Court of Clinton County, 193 Mo. App. 373; In re Ashcroft, 193 Mo. App. 486.]

To hold that when once a license has been granted by the county court, a city can do nothing but perfunctorily issue its license to the holder or holders of the county license is to hold that the city can do nothing but impose a city tax on the tables operated thereunder at whatever place in the city the licensee may choose to select and without regard to the conditions produced thereby. The regulation of pool halls is not confined merely to their government and control after they have been licensed and established but it extends to and includes a due and proper consideration of the character of the proposed licensee and the disposition manifested by him to conform to the reasonable regulations imposed on such licensee. It will not do to say that under the power to ''regulate and to license'' and to ''levy and collect a license tax'' and to ''license, tax, regulate or suppress,'' a city is compelled, *regardless of the facts,* to issue the license and then afterwards attempt to regulate and compel obedience by prosecution, suppression, or other means. The action of the county court in granting its license cannot be *res adjudicata* of questions involved in the matter of whether the city shall grant its license to suuch licensees to conduct a pool hall at the place selected and regardless of whether the licensees will obey the city's reasonable regulations and requirements or not. None of the conditions necessary to the creation of the status of *res adjudicata* are present. There is no identity in the thing sought, nor in the cause of action, nor in the persons and parties thereto, nor otherwise. [23 Cyc. 1666.] Nor was the so-called judgment of the county court, relied upon as *res adjudicata,* rendered in a contest upon opportunity given to parties concerned to be heard. It was an *ex parte* proceeding. [23 Cyc. 1223-

1224.] A city license is a necessary prerequisite to operate a pool or billiard hall in the city; and if a license from the county court is obtained, this does not dispense with the necessity of the city license. [Cauble v. Craig, 94 Mo. App. 675.] And since a county court license is no protection for lack of a city license, neither does the action of the county court in granting a license *necessarily* bind the city. It will be observed also that, although the alternative writ says the place where the pool hall is to be conducted is a fit and proper place, yet nowhere is that place specified except once and then only vaguely as the "first floor of a two-story brick business building located in said city," which doubtless would apply equally well to any number of places in said city; and the peremptory writ is still less definite as to the place. Consequently, the issuance of the peremptory writ would enable the relators to set up their pool hall in any one of a number of places in the city whether proper or not. It will not do to say that this feature cannot be considered because no mention thereof is made in respondents' return. For the court is not bound to take the case as presented, but may consider respondents' rights, the interest of third persons, and other matters in determining whether the writ shall go. [State ex rel. v. Bank of Conception, 174 Mo. 589, 593; 26 Cyc. 144.]

We think the judgment should be reversed and the cause remanded; and, since the relators applied for the alternative writ before it was known what action the city would take and before time or opportunity was given the city to consider the application and act, that the order of remand should be accompanied with directions to quash not only the peremptory writ but the alternative writ also and dismiss the proceeding. It is so ordered. All concur.