AERATED PRODUCTS COMPANY OF BUFFALO, INC., Respondent, *v.* EDWARD S. GODFREY, JR., Commissioner of Health of the State of New York, Appellant.

Third Department, April 29, 1942.

*John J. Bennett, Jr., Attorney-General [Hugh Reilly* and *F. R. Chant, Assistant Attorneys-General,* of counsel], for the appellant.

*Rann, Brown, Sturtevant & Kelly [Howard R. Sturtevant, James M. Hengst* and *Mark N. Turner* of counsel], for the respondent.

HILL, P. J. The defendant, State Commissioner of Public Health, appeals from a declaratory judgment which determined that " Instant Whip," manufactured by plaintiff under a patented process, is not a milk product as defined in regulation 1 of chapter 3 of the Sanitary Code, established and made pursuant to section 2-b of the Public Health Law, but is a manufactured food product, not subject to the Sanitary Code, and should be classified as " frozen desserts mix " (Agric. and Mkts. Law, § 71-a), and that the attempt by the defendant to require plaintiff to comply with the Sanitary Code is unreasonable and unconstitutional, and amounts to the taking of property without due process of law and is a violation of the equal protection and due process clauses of the Constitutions of the United States and of the State of New York.

Instant Whip is cream, sugar and vanilla or other flavor, which is aerated by introducing nitrous oxide into the mixture. It is prepared and sold in individual metal containers, each of about a pint capacity. These are fitted with a screw top pierced by a small tube which permits air to be withdrawn from the container and a device which opens a valve through which the cream passes when desired for use. Seven ounces of thirty-five per cent pasteurized cream, six per cent of sugar and the desired amount of flavoring about half fills the container. The screw top is fastened tightly, the air is exhausted and sufficient harmless and tasteless nitrous oxide is admitted to create a pressure of 150 pounds per square inch. When the valve is opened, the cream, aerated with nitrous oxide, comes from a spout. It is placed in crushed ice until delivered, and if kept cool will remain sweet for several days, possibly a week or two. It is used as a garnish for drinks dispensed at soda fountains, in the culinary department of the home, and for all the purposes for which ordinary whipped cream is used. It is asserted by the plaintiff, and not seriously denied by the defendant, that there is less opportunity for the development of bacteria in cream treated in this manner than that whipped in the usual way.

The plaintiff asserts that the sale of the product is controlled by the Agriculture and Markets rather than the Public Health Law. If this be the fact, the product of plaintiff's plant in Buffalo, supervised by the Commissioner of Agriculture, may be sold at any place in the State without let or hindrance of local health boards. The defendant contends that the product is not defined by section 71-a of the Agriculture and Markets Law, but is subject to the Public Health Law (§§ 6-a, 6-b and 6-c), which has to do with the regulation and supervision of the sale of milk and cream, and is further controlled by the Sanitary Code, established by the

Public Health Council and approved by the defendant. (Pub. Health Law, § 2-b.) If the latter be the fact, then plaintiff's product, prepared in Buffalo from cream purchased and delivered there, may not be sold in areas under the jurisdiction of different local boards of health. If plaintiff is acting within its jural rights in preparing the product in Buffalo, the interference by the defendant with the sale in Rochester, Niagara county and all areas not under the Buffalo local board of health, is confiscatory and unconstitutional.

At the outset defendant challenges plaintiff's right to maintain this action, asserting that the only remedy is a review under article 78 of the Civil Practice Act or to submit to arrest and test the matter in the criminal court. The right to test a statute by submitting to arrest is not a remedy. (*New York Operators* v. *State Liquor Authority*, 285 N. Y. 272.) While plaintiff might have a remedy of a kind under article 78 of the Civil Practice Act, it is not limited to that review. Constitutional rights may be tested in an action for declaratory judgment. (*Richfield Oil Corp.* v. *City of Syracuse*, 287 N. Y. 234; *Dun & Bradstreet, Inc.*, v. *City of New York*, 276 id. 198.) It is also asserted that there is a non-joinder of parties defendant, and that the members of the Public Health Council should be included. " The Commissioner of Health shall take cognizance of the interests of health and life of the people of the State, and of all matters pertaining thereto. He shall exercise general supervision over the work of all local health authorities. * * *." (Pub. Health Law, § 4.) The duties of the Public Health Council are legislative and advisory. " The Public Health Council shall have no executive, administrative or appointive duties. It shall, at the request of the Commissioner of Health, consider any matter relating to the preservation and improvement of public health, and may advise the Commissioner thereon; and it may from time to time submit to the Commissioner any recommendations which it may deem wise." (Pub. Health Law, § 2-c.) " Subject to approval by the Commissioner of Health, the Public Health Council shall have power by the affirmative vote of a majority of its members to establish and from time to time amend and repeal sanitary regulations * * *. The regulations so established shall be called the Sanitary Code." (Pub. Health Law, § 2-b.) The Attorney-General and district attorney are the proper defendants in an action to test the constitutionality of a statute enforcible by them. The State Commissioner of Health, intrusted with the duty of enforcing the Sanitary Code, is a proper and the only necessary party in this action to test the constitutionality of a provision of the Sanitary Code.

The defendant asserts his right to control and supervise plaintiff's product and to direct the local boards of health to act, under an amendment to regulation 1 of chapter 3 of the Sanitary Code, adopted April 14, 1939, which provided, " ' Milk products ' means * * * cream to which any substance has been added and for use in fluid state or whipped."

It seems that expensive machines and paraphernalia necessarily are used in the preparation of Instant Whip for the market, and it will be impractical and uneconomical to have a plant in the domain of each local health board. The output of one plant is sufficient to supply several cities like Buffalo and Rochester. It is contended, and the acts of the defendant indicate, that if the preparation is placed under control of the Department of Health, each local board may, and doubtless will, insist that the cream used be examined by local authorities and purchased at sources approved by them. No untoward results have followed the present plan of wide distribution from one plant. Plaintiff, since early in 1940, has held a permit or license from the Commissioner of Agriculture and Markets to purchase cream for the purposes of manufacturing the product, and during that time the plant located at Buffalo has made distributions at considerable distances. Under somewhat analogous conditions, the Legislature,* in 1932, removed ice cream, frozen desserts and the compound designated " frozen desserts mix " from the control of the Department of Health and placed them under the Department of Agriculture and Markets. Minor objections were raised by some of the State's experts as to the difficulty of proper sanitation in connection with the screw top and the interior of the small tube. The weight of testimony was not with the State on these issues, and a finding that proper sanitation is observed would be sustained.

Except for the items mentioned in the Agriculture and Markets Law (Art. 4-A) the inspection and supervision of sanitary measures as to milk and milk products consumed are controlled by the Department of Health, and in 1939 the Sanitary Code was amended, with the intent that Instant Whip be included. The amending words, " cream to which any substance has been added for use in fluid state or whipped," would include Instant Whip. If it is not included under article 4-A of the Agriculture and Markets Law, it is reasonable and proper that inspection and control should be exercised by the Department of Health. Milk is a vehicle by which dangerous micro-organisms may be transported and a substance in which they will develop. The plaintiff argues that the

---

* Agriculture and Markets Law, art. 4-A, added by Laws of 1932, chap. 226, and amd. by Laws of 1937, chap. 410.— [REP.

product is subject to the Agriculture and Markets Law (§ 71-a, subd. 9). This is the only subdivision which could apply, as all the other substances defined are frozen and Instant Whip is not frozen. The language is, "'Frozen desserts mix' means any unfrozen mixture to be used in the manufacture of frozen desserts for sale or resale containing in whole or in part the ingredients enumerated under the definition of ice cream, frozen custard, milk sherbet, ice or ice sherbet and frozen confection." Instant Whip is not used in the manufacture of frozen desserts, but as ordinary whipped cream. Enumeration of the uses of whipped cream is hardly necessary, at least for those who have an appetite and taste for rich food and pastries. Instant Whip is defined by the Sanitary Code, and while many arguments would recommend to the Legislature that it be removed from the supervision of the Health Department, along with frozen desserts, this is not within the province of the courts, and the arguments should be presented to the Legislature.

The judgment should be reversed on the law and facts.

CRAPSER, BLISS, HEFFERNAN and SCHENCK, JJ., concur.

Judgment reversed on the law and facts and complaint dismissed, with costs.

The court reverses the following findings of fact contained in the decision: Nos. 21, 26, 27, 28, 29, 30, 32, and all of the findings of fact contained in the portion of the decision captioned conclusions of law, and the court particularly disapproves the following conclusions of law: Nos. 7, 8, 9, 10, 11, 12, 13 and 14, and makes the following findings of fact: Instant Whip is a milk product. Its preparation and sale are subject to regulation under the Public Health Law.