STA–WHIP SALES COMPANY, a corporation, Appellant,

v.

The CITY OF ST. LOUIS, a municipal corporation; Raymond R. Tucker, Mayor of the City of St. Louis; Dr. J. Earl Smith, Health Commissioner of the City of St. Louis; I. A. Long, President, of the Board of Police of the City of St. Louis, and John M. Dalton, Attorney General of the State of Missouri, Respondents.

No. 45723.

Supreme Court of Missouri, Division No. 2.

Dec. 9, 1957.

Ray T. Dreher, St. Louis, for plaintiff-appellant.

James V. Frank, City Counselor, William B. Anderson, Asst. City Counselor, St. Louis, for respondents, The City of St. Louis, a Municipal Corp., Raymond R. Tucker, Mayor of City of St. Louis; Dr. J. Earl Smith, Health Comr. of City of St. Louis; I. A. Long, President of Bd. of Police Comrs. of the City of St. Louis.

LEEDY, Judge.

Action under the Declaratory Judgment Act (§§ 527.010–527.140, RSMo and VAMS) for judgment declaring the milk control ordinance of the City of St. Louis (No. 47605) to be unconstitutional and void, "and to declare the plaintiff's rights, status and other legal relations arising under the purported ordinance aforesaid * * *." Separate motions to dismiss were filed respectively by the Attorney General on the one hand, and by all other defendants, in their own behalf, alleging, among other grounds, the failure or want of the petition to disclose an existing justiciable controversy between the parties. Both motions were sustained, judgment of dismissal thereon was rendered, and plaintiff appealed. The Attorney General has filed no brief, and the other respondents seek to sustain the propriety of the dismissal only on the ground just referred to, so that becomes the first question for determination. The petition is by no means as full and explicit as good pleading would seem to require, but we have nevertheless concluded that it sufficiently appears from its allegations that a justiciable controversy between the parties exists, and did at the time of the institution of this action.

The ordinance in question imposes extensive regulations upon the production, distribution and sale of milk and milk products within the City of St. Louis and its police jurisdiction. Its provisions insofar as here pertinent are thus summarized

in appellant's statement and to which respondents accede:

"Section 1 of the Ordinance defines various types of milk and cream; paragraph K of Section 1 states that 'Milk products shall be taken to mean and to include * * * any other product made by the addition of any substance to milk, or to any of these milk products, and used for similar purposes, and designated as a milk product by the health officer.'

"Section 2 of the Ordinance provides that it shall be unlawful to produce, sell, offer or expose for sale, or have in possession with intent to sell, any milk or milk product which is ungraded.

"Section 3 provides that it shall be unlawful for any person to sell or offer for sale any milk or milk product defined in the Ordinance, who does not possess a permit from the Board of Public Service so to do. Said section further provides that the only persons who shall be entitled to receive and retain such a permit are those who comply with the requirements of this Ordinance.

"The Section then proceeds to set forth the information which must be supplied to the Board in making application for a permit. In connection with the issuance of a permit, paragraph 8 of Section 3 states:

"'Where the substance or substances added to the milk or milk product so as to constitute the product a milk product within the meaning of this Chapter cannot be graded by reason of the absence of recognized, approved grading standards and the Health Commissioner so finds no permit for the sale thereof shall be issued.'

"Section 7 is entitled 'The Grading of Milk and Milk Products,' and provides the standards to be used in determining the grades of certain milks therein set forth. The introductory paragraph of this section states:

"'* * * Grades shall be based upon the following standards, the grading

of milk products being identical with the grading of milk except that the bacterial-count standards shall be doubled in the case of sweet (not cultured) creams and half and half, and shall be omitted in the case of cultured milk and milk products. Vitamin D milk shall be only of grade A pasteurized or certified quality. The grade of a milk product shall be that of the lowest grade of milk or milk product used in its preparation.'

"Section 8 of the ordinance provides that the only milk or milk products which may be sold are those which have been approved as certified or Grade A pasteurized. The section then provides for a delayed enforcement of the Ordinance with respect to certain milk products, and reads as follows:

"'* * * Provided, that those milk products which are being lawfully sold prior to the passage of this ordinance without being graded shall be sold without any grade until 24 months after the passage of this ordinance.'"

It was during this permissive period of 24 months that plaintiff filed this action.

The petition assails the ordinance as denying to plaintiff due process and equal protection of the law in violation of designated sections of both federal and state constitutions (1) for failure to establish uniform standards applicable to all alike within a defined class; and (2) as an unlawful delegation of municipal power to the health commissioner to "deny the issuance of a permit according to his own conception of what shall constitute recognized and approved grading standards for substances added to milk or milk products;" and (3) because the terms of the ordinance are so uncertain, vague, indefinite and contradictory as to render it void and unenforceable.

■ Appellant is engaged in the manufacture and sale of a product known as "Sta-Whip Topping," which the petition al-

leges "is made by the scientific blending of butterfat, skimmed milk, vegetable fat, harmless stabilizer and flavoring; and that all of the said ingredients so used are wholesome, healthful and nutritious." The petition further alleges that plaintiff's "rights, status and other legal relations are affected by the purported ordinance inasmuch as plaintiff intends in the future to continue the manufacture and sale of its product, and that as a result plaintiff will be subjected to civil and criminal penalties for violation * * * of said purported ordinance," etc. Respondents contend that the latter does not constitute a "factual allegation that the Board of Public Service will refuse to issue appellant a license, or that any facts exist which would cause the said board to refuse to issue such a license." However, respondents do admit that if appellant had applied for and been refused a permit, and it was shown that its product could not possibly be graded at the expiration of the delayed enforcement period (July 1, 1957), then the issue would be different. One of the substances used in the product is vegetable fat, and the ordinance does not purport to prescribe standards by which vegetable fat shall be graded, if, in fact, it is susceptible to grading within the meaning of the ordinance. It is true the petition does not in precise terms allege the reason for which a permit would be refused, but we think both parties treat the matter as though such refusal would follow. In this situation the adjudication sought would not be confined to abstract propositions of law, nor constitute an advisory opinion upon a hypothetical state of facts, but, on the contrary, there is involved a very real dispute going to the right of appellant to maintain its business as in the past (the existence of which right respondents deny), and hence a justiciable controversy.

■ Contrary to respondents' further contention, we do not doubt the practice and authority of this court to pass on the constitutionality of a questioned ordinance notwithstanding the fact that the dismissal below may have been on grounds not going to the merits of the action. Roberts v. Benson, 346 Mo. 676, 142 S.W.2d 1058, was an action for a declaratory judgment to determine the constitutionality of a statute, in which the trial court sustained a demurrer to the petition. There, as here, the plaintiffs appealed from the judgment of dismissal, and on appeal this court, en banc, determined the constitutionality of the questioned statute. See, also, King v. Priest, 357 Mo. 68, 206 S.W.2d 547, where a situation practically identical with that in the case at bar existed: Dismissal of plaintiff's petition on motion, appeal, and determination on appeal of the validity of the questioned police board rule.

■ Aerated Products Co. v. Godfrey, 290 N.Y. 92, 48 N.E.2d 275, involved a somewhat similar product called "Instant Whip." The question there was whether the product was subject to regulation under the Public Health Law as a milk product, or, as the manufacturer contended, as a manufactured food product under the Agriculture and Markets Law. The referee's decision was in favor of the plaintiff, which was reversed by the Appellate Division, 263 App.Div. 685, 35 N.Y.S.2d 124, which, in turn, was reversed by the Court of Appeals, the latter holding that the inclusion of the product by amendment to the Public Health Law was invalid as unreasonable, discriminatory and arbitrary, and denying the manufacturer equal protection of the law and due process of law. In the case at bar, appellant does not assail eo nomine the *classification* of its product as a milk product, but, notwithstanding this difference in pleading, the ultimate effect of its contention is not substantially different from that considered in the Aerated Products case. But we have concluded that the constitutionality of the ordinance should not be determined in the present state of the record for the reason that facts which might vitally affect that determination do not rest on common knowledge so as to be subjected to judicial notice. Borden's Farm Products Co., Inc.

v. Baldwin, 293 U.S. 194, 55 S.Ct. 187, 79 L.Ed. 281; Defiance Milk Co. v. DuMond, 282 App.Div. 977, 125 N.Y.S.2d 533. We do not have any knowledge of the facts whereon the ordinance is based—whether the challenged provisions are in furtherance of the purity of milk products, or against adulteration as such, or to protect against possible fraud or imposition, nor do any facts appear with reference to the circumstances and conditions under which the product is manufactured and marketed. Background material of this nature is deemed essential to a determination of the effect of the operation of the ordinance as being arbitrary or capricious, or for other reasons urged by appellant. Accordingly, and so that appellant may have a determination of the questions sought to be raised by its petition, the judgment of dismissal is reversed, and the cause is remanded for further proceedings (including the filing of an amended petition, if appellant is so advised) consistent with this opinion.

All concur.