YOUNGER, *Appellant,* v. JUDAH.

.Division One, July 2, 1892.

1. **Federal Constitution:** FOURTEENTH AMENDMENT: CIVIL RIGHTS. The fourteenth amendment to the United States constitution which declares that "no state shall make or enforce any law which shall abridge the privileges and immunities of the citizens of the United States, * * * nor deny to any person within its jurisdiction the equal protection of the laws," is prohibitory only of state legislation and state action. (*Civil Rights Cases,* 109 U. S. 3.)

2. ——: ——: THEATER RULES. The rules of a theater reserving certain parts thereof for white persons while allowing persons of African blood to occupy other parts are not violative of said fourteenth amendment, and may, in the absence of any statutory provision to the contrary, be enforced.

*.Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.          ٭

AFFIRMED.

*Henry R. Hall* for appellant.

(1) A theater is a public place. When an owner of property devotes it to a use in which the public has an interest, he in effect grants to the public an interest in such use; and must to the extent of that interest

submit to be controlled by the public for the common good, as long as he maintains the use. *Munn v. Illinois*, 94 U. S. 113; *Joseph v. Bidwell*, 28 La. Ann. 382; *Bowlin v. Lyon*, 67 Iowa, 536; *Peik v. Railroad*, 94 U. S. 164; *Donnell v. State*, 48 Miss. 661. (2) Any owner of property to whose use the public has an interest or, in other words, "*quasi* public" in its nature can make no discrimination against a certain class of people on account of color. Discrimination is not permitted by reason of race or color in the use and enjoyment of certain property of a public or "*quasi* public" nature by law: Hotels, railroad cars or other conveyances used by common carriers, and places of public amusement, as theaters, etc., and this inalienable right was conferred upon all alike by our constitution. Fourteenth Amendment, Constitution United States; Bill of Rights, Constitution of Missouri, art. 2, sec. 10; *Munn v. Illinois*, 94 U. S. 113; *Ex parte Virginia*, 100 U. S. 339; *Strauder v. West Virginia*, 100 U. S. 303; *Neal v. Delaware*, 103 U. S. 370; *Coger v. Packet Co.*, 37 Iowa, 145; *Baylies v. Curry*, 128 Ill. 287; 3 Blackstone, star p. 212; *People v. King*, 110 N. Y. 418; *Donnell v. State*, 48 Miss. 661; *Ferguson v. Gies*, 82 Mich. 358. (3) The sale of the ticket with coupons attached for certain seats created an interest in the purchaser thereof in the seats so designated by the coupons, and a refusal to allow plaintiff to occupy his seats so purchased was a breach of the duty owing by defendant to plaintiff, and, if such breach of duty was coupled with a tort, the defendant was liable to plaintiff for exemplary or punitive damages. The failure on the part of defendant to comply with his contract creates a breach thereof, and if such breach is accompanied with a tort, and has been wilfully committed, the plaintiff is thereby entitled to exemplary or punitive damages. Sedgwick on Measure of Damages, pp. 44, 48 and note; *Kennedy v.*

*Railroad,* 36 Mo. 364; *Hyatt v. Railroad,* 19 Mo. App. 287; *McGinnis v. Railroad,* 21 Mo. App. 399; 2 Parsons on Contracts, p. 162. (4) And the case should have gone to the jury to pass on the question of punitive or exemplary damages, also indignities imposed, wilfully, maliciously or wantonly committed. *Brassfield v. Railroad,* 19 Mo. App. 651; *Perkins v. Railroad,* 55 Mo. 201; *Hicks v. Railroad,* 68 Mo. 329; *Smith v. Railroad,* 23 Ohio St. 10. (5) The doctrine of revocable license will not apply in a case of this character. A license is personal in its nature and not subject to assignment, and thereby becomes void on being transferred. A license for the enjoyment of certain privileges for land, obtained under an executed verbal contract, founded on a sufficient consideration, is irrevocable by the licensor. Washburn on Easements [4 Ed.] p. 8; *Taylor v. Waters,* 7 Taunton, 374; *Thompson v. McElarney,* 82 Pa. St. 174; *Baylies v. Curry,* 128 Ill. 287; *Drew v. Peer,* 93 Pa. St. 234; *Lacy v. Arnett,* 33 Pa. St. 169; *Snowden v. Wilas,* 19 Ind. 10; *Munford v. Whitney,* 15 Wend. (N. Y.) 380.

*Henry Wollman* and *Alexander New* for respondent.

(1) There is no federal civil rights bill operating upon individual theater owners. *United States v. Cruikshank,* 92 U. S. 542; *Virginia v. Rives,* 100 U. S. 313; *Ex parte Virginia,* 100 U. S. 339. (2) The state of Missouri has passed no civil rights bill. (3) At common law a theater was regarded as private property, and its owner had the right to admit or to exclude any person whom he saw fit. *Bowling v. Lyon,* 67 Iowa, 536; *Pierce v. Spaulding,* 12 Mo. App. 143. (4) Theaters being private property, the courts hold that the owner thereof can admit or exclude any person

whom he sees fit; and that, even after having admitted a person, his right to remain was simply in the nature of a revocable license, and that, if the owner so desires, such party must withdraw. *Clifford v. Braddon*, 2 Camp. 358; *Wood v. Leadbitter*, 13 M. & W. 838; *Fentimen v. Smith*, 4 East, 107; *Rex v. Homdon on the Hill*, 4 M. & Sel. 565; *McCrea v. Marsh*, 12 Gray, 211; *Bridges v. Purcell*, 1 Dev. & Bat. 492; *Foot v. New Haven*, etc., 23 Conn. 214; *Jamison v. Milleman*, 3 Duer, 255; *Burton v. Scherf*, 1 Allen, 133; *Fuhr v. Dean*, 26 Mo. 119; *Deslogue v. Pearce*, 38 Mo. 599; *Allen v. Mansfield*, 82 Mo. 695. (5) Even if a theater were a "public place," still the proprietor would have a right to make regulations as to where white and colored people should sit. This has been said by the supreme court of the United States to be the law with reference to steamboats, although they are navigating public highways. *Hall v. DeCuir*, 5 Otto, 547. (6) No class of people have a right to demand that, necessarily, they should receive exactly the same accommodations that another class of people have. The plaintiff in this case was offered seats in another part of the house, which, by rule, was set apart for colored people, and there is nothing in the testimony to show that it was an inferior part of the house. The courts have time and again held with almost uniformity that even in the public schools, which are supported by the public, and in the public cars, a distinction can be made between white and colored people, and that separate schools and separate cars may be maintained. *State v. McCaim*, 21 Ohio St. 198; *Pertonneau v. Directors*, 3 Woods, 177; *Cory v. Carter*, 48 Ind. 327; *Roberts v. Boston*, 5 Cush. 198; *People v. Easton*, 3 Abb. Pr. (N. S.) 159; *Dallas v. Fosdick*, 40 How. Pr. 249; *United States v. Burtin*, 10 Fed. Rep. 30; *People v. Gallagher*, 93 N. Y. 438; *Railroad v. Miles*, 55 Pa. St. 209;

*The Sue*, 22 Fed. Rep. 843; *Logwood v. Railroad*, 23 Fed. Rep. 318; *Railroad v. Wells*, 85 Tenn. 613; *Murphy v. Railroad*, 23 Fed. Rep. 637; *Railroad v. Williams*, 55 Ill. 185; *Day v. Owens*, 5 Mich. 520; *Ward v. Flood*, 48 Cal. 36.

BLACK, J.—The questions presented for our consideration in this case arise out of the action of the court in sustaining a demurrer to the plaintiff's evidence.

The substantial averments of the petition are: That the defendant was the lessee of the Ninth Street theater in Kansas City, that the plaintiff purchased two tickets calling for seats in the orchestra, and that defendant and his employes unlawfully and maliciously refused to seat him in the seats so purchased. There is the further allegation that defendant and his agents unlawfully, maliciously and insultingly ejected plaintiff from the theater.

The evidence discloses these facts: After the plaintiff had purchased the tickets as alleged, he and his companion, a colored woman, passed up a flight of stairs. An employe, stationed at the upper landing, received the tickets, detached portions of them, and handed the seat-coupons back to the plaintiff. He and the woman passed to the orchestra floor, where he gave the seat-coupons to an usher, and they all three started toward the seats. On their way, this usher was met by another one, and the two had a conversation. Plaintiff in his evidence says they held a "whispered confab for a few minutes," that during this conversation he overheard the word "nigger," that one of the ushers informed him that he could not have the seats, that there had been some mistake. After a further conversation the usher said: "You cannot stay here; it is against the rules." The usher then pro-

posed to exchange the tickets for others and seat him in a different part of the house, and for that purpose started up to the balcony, but the plaintiff refused to follow.

As to what then occurred, the plaintiff testified: "I went on down to the box office and presented the tickets to the person who sold them to me, and asked him why I could not have the seats. He seemed to be indignant and said, 'You can have them.' He looked at me again and I suppose he discovered that drop of African blood in me and said, 'It is a mistake; those seats are occupied.'" The person in charge of the ticket office offered to exchange the tickets for tickets in the balcony or refund the money paid by plaintiff, but the latter refused both offers, and left of his own volition. He and his companion went to another theater where he procured seats set apart for colored persons. He had attended entertainments at the defendant's theater on former occasions, and when in company with colored persons took a seat in the balcony, but when alone was admitted to the orchestra. He says the usher on the occasion in question used sneering language, but his further examination shows clearly that the usher did no more than say in firm but respectful language that he could not have the seats, because it was against the rules of the house.

The charge made in the petition that defendant ejected plaintiff from the theater is not supported by any evidence, and must, therefore, be disregarded.

The tickets for seats in the orchestra were sold to plaintiff on the supposition that they were to be used by white persons. This is evident. It is clear too that defendant had a rule to the effect that colored persons attending his place of amusement should occupy seats in the balcony; and the only real question in this case is, whether he had a right to make and

enforce such a rule. If he had, the plaintiff has no cause of action.

It is earnestly insisted on behalf of the plaintiff that such a rule amounts to discrimination against colored persons, and that such discrimination is prohibited by the fourteenth amendment of the constitution of the United States. The clauses of that amendment relied upon by the plaintiff are those whereby it is declared that "no state shall make or enforce any law which shall abridge the privileges and immunities of the citizens of the United States, * * * nor deny to any person within its jurisdiction the equal protection of the laws." These clauses do not undertake to confer new rights, nor do they undertake to regulate individual rights. They are simply prohibitory of state legislation and of state action. All this was held and ruled in the *Civil Rights Cases*, 109 U. S. 3. As there stated "individual invasion of individual rights is not the subject-matter of the amendment." This state has enacted no law having any application to the present case. It does not undertake to say how theaters and other places of amusement shall be managed. As the state does not by itself or through the City of Kansas undertake to regulate theaters, and as the clauses of the fourteenth amendment before noted are prohibitory of state action only, they have nothing to do with the question in hand. There is nothing upon which the prohibitions can operate.

Many of the states have enacted laws known as civil rights statutes, and we are cited to cases upholding and giving effect to such laws. Under them it has been held that the proprietor of a theater will be liable in damages for a refusal to admit a colored person (*Joseph v. Bidwell*, 28 La. Ann. 382; *Donnell v. State*, 48 Miss. 661); and for a refusal to admit a colored

person to the several circles or grades of seats in a theater (*Baylies v. Curry*, 128 Ill. 287); and for refusing a colored person admission to a skating rink (*People v. King*, 110 N. Y. 418); and for drawing any line of distinction between a white and black man at a restaurant. *Ferguson v. Gies*, 82 Mich. 358. But, as we have no such statute, these cases furnish no aid in the solution of the question now in hand.

We have held that our statute which establishes separate schools for colored children does not violate the fourteenth amendment, and this, for the reason that separation of children for such purposes is but a reasonable regulation of the exercise of a right conferred upon all children, whether white or black. *Lehew v. Brummell*, 103 Mo. 546. And so it has been held in several states, as will be seen by the authorities cited in that case and in the brief of defendant in this one. We believe it is conceded on all hands that a common carrier of passengers may make and enforce reasonable rules for seating passengers; and it has been held that such a carrier, in the absence of any statute to the contrary, may separate white and black passengers in a public conveyance, as a railroad car. *Railroad v. Miles*, 55 Pa. St. 209.

In *Hall v. DeCuir*, 95 U. S. 485, the defendant was the master and owner of a steamboat enrolled and licensed under the laws of the United States. The plaintiff, a colored woman, being refused accommodations, on account of her color, in the cabin specially set apart for white persons, brought suit for damages. She based her cause of action upon a statute of Louisiana which provided that the rules prescribed by common carriers should make no discrimination on account of color. The state court construed the law as applying to those engaged in interstate commerce; but the supreme court of the United States held the act uncon-

stitutional so far as it applied to foreign and interstate commerce. Says the court: "Congressional inaction left Benson [the defendant] at liberty to adopt such reasonable rules and regulations for the disposition of passengers upon his boat, while pursuing her voyage within Louisiana or without, as seemed to him most for the interest of all concerned. The statute under which this suit is brought, as construed by the state court, seeks to take away from him that power so long as he is within Louisiana; * * * we think this statute, to the extent that it requires those engaged in the transportation of passengers among the states to carry colored passengers in Louisiana in the same cabin with whites, is unconstitutional and void. If the public good requires such legislation, it must come from congress and not from the state."

While the statute was held void as to cases like the one then in hand, because it interfered with interstate commerce, still the opinion, as we view it, proceeds upon the theory that in the absence of valid legislation the defendant had the right to set apart a portion of the steamboat for the special and exclusive use of white passengers. If common carriers may make and enforce such rules, there can be no good reason assigned why proprietors of theaters may not do the same thing. This being so, it is not necessary to a proper disposition of this case to say how far or to what extent theaters are to be regarded as public places; nor is it necessary to say to what extent they may be made public places by statute or local municipal laws. In any event the proprietors of theaters may make and enforce such rules as the one now in question.

Colored persons have their own schools, their own churches, and often their own places of amusement. Whites attending places of amusement designed specially for colored persons may be required to occupy

separate seats.   When colored persons attend theaters and other places of amusement, conducted and carried on by white persons, custom assigns to them separate seats.   Such separation does not necessarily assert or imply inferiority on the part of one or the other.   It does no more than work out natural laws and race peculiarities.   It ordinarily contributes to the convenience and comfort of both.   The colored man has and is entitled to have all the rights of a citizen, but it cannot be said that equality of rights means identity in all respects.   Here the defendant did not exclude or attempt to exclude colored persons from his theater. He provided accommodations for them, but in doing so required them to purchase tickets for and take seats in the balcony, and this rule adopted by him accords with the custom and usage prevailing in this state.   Such custom has the force and effect of law until some competent legislative power shall establish some other and different rule.   The defendant's rule was no more than a reasonable regulation which he had a right to make and enforce.

The judgment is, therefore, affirmed.   All concur.