Frank J. MARSHALL, d/b/a Marshall's
Restaurant, et al., Respondents,

v.

KANSAS CITY, Missouri, a Municipal
Corporation, Appellant.

No. 48419.

Supreme Court of Missouri,

En Banc.

April 9, 1962.

John Phillip Ryan, City Counselor, Anthony P. Nugent, Jr., Associate Counselor, Harold L. Holliday, Associate Counselor, Kenneth L. Gottschall, Asst. City Counselor, Kansas City, for appellant, Kansas City, Mo.

Bellemere & Bellemere, Kansas City, for respondents.

Alvin Shapiro, Kansas City, Jack N. Fingersh, Kansas City, Sol Rabkin, Paul Hartman, New York City, Theodore Leskes, New York City, amici curiæ.

Thos. J. Neenan, City Counselor, David S. Hemenway, Asst. City Counselor, St. Louis, for City of St. Louis, amici curiæ.

William K. Hayden, Leonard S. Hughes, Jr., Kansas City, amicus curiæ N.A.A.C.P.

STORCKMAN, Judge.

This case involves the constitutionality of an ordinance of the city of Kansas City,

Missouri, purporting to render it unlawful for restaurants, hotels and motels to refuse to serve or accommodate any person for any reason directly or indirectly relating to the race or color of such person. The plaintiffs, all engaged in the restaurant business, filed this action against the city of Kansas City seeking a declaration of the rights of the parties under the ordinance. The trial court sustained plaintiffs' motion for judgment on the pleadings, held the ordinance unconstitutional, and permanently enjoined the defendant from enforcing it against the plaintiffs. The defendant appealed. In addition to the briefs filed by the parties, three briefs by amici curiae in support of the ordinance have been filed by leave.

■ Jurisdiction of the appeal is in the supreme court since the constitutionality of the municipal ordinance was within the issues of law tendered by the pleadings and decided by the trial court. Art. V, § 3, Constitution of Missouri 1945, V.A.M.S.; Kansas City v. Hammer, Mo., 347 S.W.2d 865.

On January 25, 1960, the plaintiffs filed their petition for a declaratory judgment under S.Ct. Rule 87.01 et seq., V.A.M.R. and Chapter 527, RSMo 1959, V.A.M.S., with a prayer that the ordinance be declared unconstitutional and void and that the defendant be enjoined from enforcing the ordinance. The defendant's amended answer admitted the passage of the ordinance as set out in the exhibit attached to plaintiffs' petition and asserted among other things that the ordinance was constitutional and enacted in the proper exercise of the defendant's police power. The case was heard on plaintiffs' motion for judgment on the pleadings and the defendant's motion to dismiss and, in the alternative, for judgment on the pleadings. The judgment of the trial court rendered on June 20, 1960, overruled the defendant's motion to dismiss and alternative motion for judgment on the pleadings and sustained plaintiffs' motion for judgment on the pleadings and found the ordinance to be unconstitutional and void and not enforceable against the plain-

tiffs and permanently enjoined the defendant from enforcing the ordinance against the plaintiffs.

■ The defendant attacks the right of the plaintiffs to maintain the declaratory judgment action. The Declaratory Judgment Act specifically authorizes any person whose rights, status or other legal relations are affected by a municipal ordinance to have the validity of the ordinance determined and, even though the plaintiffs did not assert an intention to violate the ordinance, there was a justiciable controversy because uncertainty and insecurity existed with respect to the rights, status and other legal relations of the parties. Sections 527.020 and 527.120, RSMo 1959, V.A.M.S.; Sta-Whip Sales Co. v. City of St. Louis, Mo., 307 S.W.2d 495, 497–498 [1]; City of Nevada v. Welty, 356 Mo. 734, 203 S.W.2d 459, 460 [2]; Hudson v. Jones, Mo.App., 278 S.W.2d 799, 804 [5]. The trial court did not err in overruling defendant's motion to dismiss plaintiffs' petition.

The ordinance passed on January 15, 1960, is as follows:

"AN ORDINANCE AMENDING CHAPTER 39 OF THE REVISED ORDINANCES OF KANSAS CITY, MISSOURI, 1956, ENTITLED 'OFFENSES GENERALLY AND REGULATION OF CERTAIN BUSINESSES,' BY ENACTING ONE NEW SECTION TO BE ADDED THERETO TO BE KNOWN AS SECTION 39.261.

"BE IT ORDAINED BY THE COUNCIL OF KANSAS CITY:

"Section A. That Chapter 39 of the Revised Ordinances of Kansas City, Missouri, 1956, entitled 'Offenses Generally and Regulation of Certain Businesses,' is hereby amended by enacting one new section to be added thereto to be known as Section 39.261, said section to read as follows:

"Section 39.261. (a) It shall be unlawful for any owner, operator or manager of any hotel, motel or restaurant in Kansas City,

Missouri, which offers lodging or food to the public, or for any agent or employee of such owner or operator to refuse, withhold from or deny to any person, for any reason directly or indirectly relating to the race or color of such person, any of the accommodations, advantages, facilities or services of such hotel, motel or restaurant.

"(b) The terms 'hotel' and 'motel,' as used in this ordinance, shall include every establishment offering lodging to transient guests for compensation, and which is not a bona fide private club, but said terms shall not apply to any such establishment if the majority of occupants therein are permanent residents.

"(c) The term 'restaurant,' as used in this ordinance, shall include every cafe, cafeteria, coffee shop, sandwich shop, snack bar, supper club, soda fountain, soft drink or ice cream parlor, luncheonette, or other similar establishment which offers food for purchase and consumption on the premises, and which is not a bona fide private club, but the term 'restaurant' shall not apply to taverns and bars.

"(d) There is hereby established a fair public accommodations committee, to be composed of three members of the commission on human relations, appointed by the Mayor for terms of one year. The committee shall receive and investigate, with assistance from the staff of the city counselor and the said commission, all complaints of alleged violations of this ordinance. The committee shall endeavor to adjust such complaints by education, persuasion, and conciliation between the parties affected. If these efforts fail to resolve the problem promptly, and no later than thirty days after receiving a complaint, the committee shall refer the complaint to the city counselor for appropriate action.

"(e) Conviction of any violation of the provisions of this ordinance shall be deemed a misdemeanor punishable by a fine of not less than $25 and not more than $200 for each offense.

"(f) This section shall neither add to nor detract from any civil remedies now available to persons subjected to racial discrimination in hotels, motels and restaurants."

In general the plaintiffs contend that they have no common-law obligation to serve every orderly person who presents himself such as innkeepers have, that they have a constitutional right to serve or reject customers for any reason they may choose, and that the defendant city is without authority to enact a valid ordinance prohibiting their discriminating against customers on account of race or color. Whether restaurateurs are under a common-law obligation to serve all proper persons alike does not seem to have been decided in this state, but there are cases from other states tending to support the plaintiffs' contention. We may assume for the purpose of this case that the common-law obligation of innkeepers does not extend to restaurateurs.

■ A number of states have adopted statutes designed to secure to all persons equal rights and privileges in places where the public is generally served, accommodated or entertained. In some instances violation of such statutes is made a misdemeanor and others provide a forfeiture to the party aggrieved or give him a right of action to recover damages. "Laws containing such guaranties are generally known as 'civil rights statutes,' and their validity has been made the subject of frequent attack, based upon the contention that they violate constitutional provisions prohibiting the deprivation of life, liberty, or property without due process of law. Where the question has been raised, however, it has been held that such legislation is a proper exercise of the police power of the state." 10 Am.Jur., Civil Rights, § 8, p. 902. Under some of these civil rights statutes, restaurants are among the businesses specifically forbidden to discriminate on account of race or color. 10 Am.Jur., Civil Rights, § 21, p. 914.

■ Such statutes are in harmony with the 14th Amendment to the Constitution of the United States, § 1, which provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Since the decision in "The Civil Rights Cases", 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835, it has generally been held that these provisions of the 14th Amendment are prohibitory as to the states only, that acts of Congress with respect thereto are not operative directly upon private persons in the several states and that states, though not required to do so, may pass laws consistent with and not in violation of the provisions of the 14th Amendment. Unquestionably this state under its police powers has the right to pass civil rights laws of this sort but has not done so. The essential question in this case is how much of the state's police power to regulate businesses and vocations at the local level can be and has been delegated to the defendant city.

■ Businesses, trades, occupations and vocations carried on within a municipal corporation are subject to reasonable regulation by the municipal corporation under its police power which may be delegated to the municipal corporation in express terms or by implication. Komen v. City of St. Louis, 316 Mo. 9, 289 S.W. 838, 840 [4]; 7 McQuillin Municipal Corporations, 3d Ed., § 24.321, pp. 191–192. Generally the cases from other jurisdictions cited by the plaintiffs which hold that restaurateurs have the right to serve or not to serve persons as they may for any reason choose are *damage actions* and a prosecution under a statute or municipal ordinance of the kind before us was not involved. Younger v. Judah, 111 Mo. 303, 19 S.W. 1109, 16 L.R.A. 558, also a damage suit, held there was no actionable wrong in a theater operator having and enforcing rules for the separate seating of whites and negroes and stated, 19 S.W. 1109, 1110: "This state has enacted no law having any application to the present case. It does not undertake to say how theaters and other places of amusement shall be managed. As the state does not by itself *or through the city of Kansas* undertake to regulate theaters, and as the clauses of the fourteenth amendment before noted are prohibitory of state action only, they have nothing to do with the question in hand." Emphasis added.

The defendant is a municipal corporation under a home rule charter as provided by Art. VI, § 19, of the Constitution of Missouri. As such it has the right to adopt and amend its charter and has such powers as are designated by its charter and which are consistent with the constitution and laws of the state. Article I, § 1, subd. § 57, of the Charter of Kansas City authorizes the city: "* * * to license, tax and regulate any and every person, firm, association, or corporation engaged in the occupation, business, trade, pursuit, profession, calling, employment, vocation, avocation or practice of keeping, maintaining, conducting, managing, directing, operating, overseeing or superintending any * * * hotel * * * or * * * restaurant * * *."

Other pertinent charter provisions are:

Article 1, § 1, subd. § 29: "To define, prohibit, abate, suppress, prevent or regulate all acts, practices, conduct, businesses, occupations, callings, trades, uses of property, and all other things whatsoever detrimental or liable to become detrimental to the health, morals, comfort, prosperity, safety, convenience or welfare of the inhabitants of the city, and to prescribe limits within which the same shall be prohibited."

Article 1, § 1, subd. § 61: "To enact all needful ordinances for preserving order, securing persons or property from violence, danger and destruction, for protecting public and private property, for promoting the public health, safety, convenience, comfort, morals, prosperity and general interests and welfare, * * *."

Article 1, § 3, of the charter provides: "The enumeration of any particular power granted in this charter shall not be construed to limit or impair any general grant of power in this charter contained."

■ Thus Kansas City has the general power to define, prohibit and regulate acts, practices and conduct of businesses which are detrimental to the health, comfort, safety, convenience and welfare of its inhabitants as well as the specific power to license and regulate restaurants. The term "regulate" as used in a delegation of municipal powers is one of broad import; it means generally to prescribe the manner in which a thing licensed may be conducted. Wilhoit v. City of Springfield, 237 Mo.App. 775, 171 S.W.2d 95, 100 [10]; Lauck v. Reis, 310 Mo. 184, 274 S.W. 827, 832; State ex rel. Wagner v. Fields, 218 Mo.App. 155, 263 S.W. 853, 857 [5]; Sluder v. St. Louis Transit Co., 189 Mo. 107, 88 S.W. 648, 651, 5 L.R.A.,N.S., 186.

■ A grant of power to regulate a business or vocation carries with it the authority on the part of the city to exercise the police power impliedly and necessarily vested in it in order to accomplish the municipal function delegated. Komen v. City of St. Louis, 316 Mo. 9, 289 S.W. 838, 840 [3]; Ex parte Williams, 345 Mo. 1121, 139 S.W.2d 485, 488 [5]; City of St. Louis v. Southcombe, 320 Mo. 865, 8 S.W.2d 1001, 1003 [3]; Tietjens v. City of St. Louis, 359 Mo. 439, 222 S.W.2d 70, 73 [8, 9]; Wilhoit v. City of Springfield, 237 Mo.App. 775, 171 S.W.2d 95, 100 [10]; McGill v. City of St. Joseph, 225 Mo.App. 1033, 38 S.W.2d 725, 729 [10]; Roper v. Greenspon, 272 Mo. 288, 198 S.W. 1107, 1109 [4], L.R.A.1918D, 126; Dillon, Municipal Corporations, 5th Ed., § 237, pp. 448–449.

The plaintiffs contend, however, that the enactment of a "civil rights" ordinance is beyond the police powers of a municipal corporation, citing 7 McQuillin, Municipal Corporations, 3d Ed., § 24.430, which states: "While a municipality must observe and itself *not violate constitutional or statutory* guaranties of equality of civil rights irrespective of race or social condition, insofar as these guaranties bind municipal governments, a municipal corporation ordinarily is without power to legislate upon, or extend, equality of civil rights. For example, a 'civil rights' ordinance relating to restaurants has been held to be beyond municipal power." Another section of the same work throws additional light upon what is meant by a *civil rights* ordinance as used in § 24.430. 6 McQuillin, Municipal Corporations, 3d Ed., § 22, p. 281, states: "The well-established general rule is that a municipal corporation cannot create by ordinance a right of action between third persons or enlarge the common law or statutory duty or liability of citizens among themselves. Accordingly, an ordinance designed as a 'civil rights' measure is void." Nance v. Mayflower Tavern, 106 Utah 517, 150 P.2d 773, is cited as the sole authority in support of McQuillin's statement in these two sections that a civil rights measure or ordinance is beyond municipal power and void. Nance was an action to recover damages for defendant's refusal to serve food to plaintiff. The ordinance of Salt Lake City provided in substance that "no orderly person shall be refused admission" to a restaurant during the time it was open for business. Whether the ordinance purported to create a civil liability for damages does not appear from the opinion. Without defining the kind of "civil rights" measure intended, the Utah court held that there was no statutory or constitutional authority for municipalities "to legislate in regard to civil rights." 150 P.2d at page 774, column 2. It further held that the duties and liabilities placed upon inns and innkeepers did not apply to restaurants and concluded that the complaint did not state a cause of action for damages because the defendant had breached no duty owed to the plaintiff under the common law, by statute or by valid city ordinance. If the Salt Lake City ordinance undertook to impose a liability for damages, it was broader in scope than the Kansas City

ordinance which expressly disavows any intent or purpose to create an action for damages by expressly providing that the ordinance "shall neither add to nor detract from any civil remedies now available to persons subjected to racial discrimination". Paragraph (f) of § 39.261. We regard the Nance case as authority only for the proposition that a municipal corporation absent statutory or constitutional authority cannot by ordinance create a cause of action for damages for denial of "civil rights".

The pocket part annotation to § 24.430 cites a more recent case, apparently considered contrary to Nance; it is District of Columbia v. John R. Thompson Co., Inc., 346 U.S. 100, 73 S.Ct. 1007, 97 L.Ed. 1480. The Thompson case was a prosecution for violation of an enactment by the legislative assembly of the District which provided a fine and forfeiture of license for the refusal of restaurateurs, among others, to refuse to serve a person on account of race, color, or previous condition of servitude. The District government was likened to a municipal corporation and the grant of police power was held to be broad enough and sufficient to authorize the adoption of a law prohibiting discriminations in the service at restaurants. In the course of the opinion in the Thompson case, the United States Supreme Court stated: "And certainly so far as the Federal Constitution is concerned there is no doubt that legislation which prohibits discrimination on the basis of race in the use of facilities serving a public function is within the police power of the states." 73 S.Ct. 1012. With respect to the nature of such an antidiscrimination law, the court further stated: "The laws which require equal service to all who eat in restaurants in the District are as local in character as laws regulating public health, schools, streets, and parks." 73 S.Ct. 1014. These are the only two cases touching directly on the powers of a municipal corporation to enact a "civil rights" ordinance. We consider the Thompson case to be more persuasive than the Nance case especially since the type of ordinance is shown to be essentially the same as the one involved in the case at bar.

█ A municipal corporation has been referred to as a miniature state within its locality and as an instrumentality of the state established for the convenient administration of local government. State ex inf. Ellis ex rel. Patterson v. Ferguson, 333 Mo. 1177, 65 S.W.2d 97, 99 [9], cert. den. 291 U.S. 682, 54 S.Ct. 559, 78 L.Ed. 1070; District of Columbia v. John R. Thompson Co., Inc., 346 U.S. 100, 73 S.Ct. 1007, 1012, 97 L.Ed. 1480.

█ We are constrained to hold that this municipal ordinance, designed to prevent discrimination by reason of race or color in restaurants, bears a substantial and reasonable relation to the specific grant of power to regulate restaurants and to the health, comfort, safety, convenience and welfare of the inhabitants of the city and is fairly referable to the police power of the municipal corporation. Ex parte Williams, 345 Mo. 1121, 139 S.W.2d 485, 490 [10]; Bellerive Inv. Co. v. Kansas City, 321 Mo. 969, 13 S.W.2d 628, 636–637 [8]; City of St. Louis v. Southcombe, 320 Mo. 865, 8 S.W.2d 1001, 1003 [3]; District of Columbia v. John R. Thompson Co., Inc., 346 U.S. 100, 73 S.Ct. 1007, 97 L.Ed. 1480; City of Springfield v. Mecum, Mo.App., 320 S.W.2d 742, 748 [10].

█ State ex rel. Carpenter v. City of St. Louis, 318 Mo. 870, 2 S.W.2d 713, 722 [13], has adopted this definition of police power as it now appears in 16 C.J.S. Constitutional Law § 174, p. 889: "Police power is the exercise of the sovereign right of a government to promote order, safety, health, morals, and the general welfare of society, within constitutional limits." The police power is an essential attribute of government without which constitutional guaranties of personal and property rights would be ineffective and meaningless. In their very nature, neither the police power nor constitutional limitations can be absolute; they are necessarily relative and dependent

in the complexities of modern life. 5 McQuillin, Municipal Corporations, 3d Ed., § 19.22, p. 531; Ex parte Smith, 231 Mo. 111, 132 S.W. 607, 609 [3].

In support of their contention that the ordinance violates their constitutional rights to contract with whom they choose in regard to their restaurant services, the plaintiffs cite Gideon-Anderson Lumber Co. v. Hayes, 348 Mo. 1085, 156 S.W.2d 898, which holds at p. 899 [2, 3]: "It is fundamental that liberty to contract is one of the rights protected by the due process clause. * * * But it is equally well established that the right is not absolute and universal. As stated broadly in the texts cited below, the state may restrict the right under the police power for the general welfare, and prescribe the manner in which contracts shall be made. However such restrictions must not be arbitrary or unreasonable and can be justified only by conditions calling for their imposition. * * *" The case does not support the plaintiffs' contention that the right to contract is an absolute one. It recognizes that the state may under its police power impose reasonable restrictions on the right.

It has not been demonstrated that the ordinance in question is an arbitrary or unreasonable exercise of the police power of the city; hence the ordinance is not unconstitutional as being in violation of the plaintiffs' asserted rights under Art. I, §§ 2 and 10 of the Missouri Constitution to choose and contract discriminately with their customers on the basis of race and color. Readey v. St. Louis County Water Co., Mo., 352 S.W.2d 622 [2, 4]; Ex parte Williams, 345 Mo. 1121, 139 S.W.2d 485, 488 [1, 2]; Thompson v. St. Louis-San Francisco Ry. Co., 334 Mo. 958, 69 S.W.2d 936, 942 [7, 8]; Bellerive Inv. Co. v. Kansas City, 321 Mo. 969, 13 S.W.2d 628, 636–637 [8]; City of St. Louis v. Southcombe, 320 Mo. 865, 8 S.W.2d 1001, 1003 [4].

The plaintiffs further contend that the ordinance is a special law in violation of Art. III, § 40, of the Missouri Constitution, because it does not include other businesses such as clothiers whose services the plaintiffs contend are as necessary as their own. As a general rule, it is not what a law includes that makes it unconstitutional as a special law, but what it excludes, and a law is not special in the constitutional sense if it applies alike to all of a given class provided the classification thus made is not arbitrary or without a reasonable basis. It is common knowledge that "food and shelter" or "food and lodging" are among man's basic needs and are often provided by the same establishment. They are often the subject of legislation either singly or in combination. There was no showing that any other business had been unreasonably or arbitrarily excluded from the Act. In these circumstances the businesses embraced by the ordinance do not constitute an improper classification and it is not a special law in violation of the constitutional provision. The Borden Co. v. Thomason, Mo., 353 S.W.2d 735 [5, 33–36]; ABC Liquidators, Inc. v. Kansas City, Mo., 322 S.W.2d 876, 885; Thompson v. St. Louis-San Francisco Ry. Co., 334 Mo. 958, 69 S.W.2d 936, 943 [9]; City of Springfield v. Stevens, 358 Mo. 699, 216 S.W.2d 450.

The plaintiffs further assert that the ordinance is illegal and void in that it attempts to establish a misdemeanor which is an offense beyond the municipal powers of the city. The nature or classification of the ordinance is not determined by its designation but rather by its content and character. The term misdemeanor is defined by statute as including "every offense punishable only by fine or imprisonment in a county jail, or both". Section 556.040, RSMo 1959, V.A.M.S. The penalty of the ordinance is a fine only. Its character, content and form is that of a city ordinance. It is not rendered invalid by reason of being referred to as a misdemeanor.

We have considered all of plaintiffs' attacks upon the validity of the ordinance and

find them to be without merit. The court erred in holding and declaring that the ordinance was unconstitutional and invalid.

The judgment is reversed and the cause remanded with directions to enter a declaratory judgment not inconsistent with views expressed in this opinion.

WESTHUES, C. J., and HOLLINGSWORTH and HYDE, JJ., concur.

EAGER, J., dissents in separate opinion filed.

LEEDY, J., dissents and concurs in the dissenting opinion of EAGER, J.

DALTON, J., dissents in separate opinion filed.

EAGER, Judge (dissenting).

I dissent for the reason that I do not think the City of Kansas City has the authority under its charter to enact this legislation. The authority must come from the state, either by a specific legislative delegation of power, or from express or fairly implied grants of power in the City's charter. Tietjens v. City of St. Louis, 359 Mo. 439, 222 S.W.2d 70. We are not concerned here with the *state's* authority to act in the premises. But it is interesting to note, from a practical standpoint, that the 1961 Missouri Legislature declined to enact an all-inclusive civil rights bill (HB 421), and that it was defeated on the floor of the House. The general welfare clause of the City's charter "may not be construed so as to enlarge the powers of a city further than is necessary to carry into effect the specific grants of power." Tietjens, supra, loc. cit. 73. Thus, the general welfare clause does not support the ordinance unless the power to enact is fairly comprehended in the powers specifically granted. We note here that the plaintiffs are operators of private restaurants, none of which are in any way connected with any governmental facility or means of transportation. While the ordinance is applicable to hotels and motels, no such operations are involved in this case. The principal opinion here assumes that the "common-law obligation of innkeepers does not extend to restaurateurs," and we shall do likewise. Consequently, there must be a valid and proper exercise of the City's police power in order to justify an interference with plaintiffs' private and basic rights of freedom of contract.

The authority to enact this ordinance is primarily claimed under the charter provisions permitting the City " * * * to license, tax and regulate any and every person" engaged in various occupations and business, including restaurants (Art. 1, § 1, subd. § 57) ; and to "regulate all acts, * * businesses * * * trades * * * detrimental * * * to the health, morals, comfort, prosperity, safety, convenience or welfare of the inhabitants * * *." (Art. 1, § 1, subd. § 29.)

I do not believe that this ordinance constitutes a true and bona fide "regulation" of the restaurant business, within the meaning of and for the purposes announced in the above sections of the charter. It is actually an enactment of the type often described as "civil rights" legislation, though presented here in the guise of a regulation. As such, it is not a valid exercise of the City's police power. It has nothing to do with matters of health, purity of food or drink, hours of operation, morals, or any of the ordinary things inherent in the normal operation of such a business. And, if this is truly a regulation, why should the regulatory function stop with the three categories named in the ordinance, when the same supposed necessity of regulation would apply just as well to many others? Generally, a municipality has no power to enact "civil rights" ordinances. 7 McQuillin, Municipal Corporations, 3rd Ed., § 24.430. While 6 McQuillin, 3rd Ed., § 22 is quoted in the principal opinion as supposedly qualifying the principle somewhat, I do not so interpret

it, for it seems merely to state a supplementary rule.

There has been little adjudicated authority on this question. The case of Nance v. Mayflower Tavern, 106 Utah 517, 150 P.2d 773, fully supports the views expressed in this opinion, as I understand it. The principal opinion here makes a distinction based upon the provisions of the Kansas City ordinance disclaiming the intent to create any right of action for damages. It would seem that such an ordinance, with or without a right to damages, comes within the clearly announced rule of invalidity (from mere lack of authority) expressed by the Utah Court.

In District of Columbia v. John R. Thompson Co., Inc., 346 U.S. 100, 73 S.Ct. 1007, 97 L.Ed. 1480, the court upheld an Act of the Legislative Assembly of the District, which had been enacted as post Civil War legislation in 1872 and 1873, making it a crime to discriminate against or to refuse service in restaurants, hotels, ice-cream saloons, barber shops or bath houses, to any person on account of race, color, or "previous condition of servitude." Congress had much earlier granted legislative powers to the Legislative Assembly. In the course of the opinion the court stated that this grant of power was "substantially identical with the grant of legislative power to territorial governments * * *." The court noted also that legislation by states against discrimination was not violative of the federal constitution, and that the scope of the legislative powers so delegated to the District was "as broad as the police power of a state" (346 U.S. loc. cit. 110, 73 S.Ct. loc. cit. 1013). While the court later referred to the acts as "local in character," we must remember just what the particular locality really was. In so far as the court may have implied that the act was a "regulation," if so, it was construing federal law in the light of its own decisions. We construe for ourselves our own laws and the grants of power to our municipalities, so long as there is no infringement upon the federal functions.

Concluding, I would hold that this ordinance bears no reasonable and substantial relation to the powers granted to the city in its charter, and that it is therefore not a valid exercise of the police power. I would affirm the judgment, not for the reason that the ordinance is unconstitutional but because the City had no power to enact it.

DALTON, Judge (dissenting).

It is with great regret that I find it necessary to dissent from the conclusions reached in the majority opinion in this case, because I recognize that the sole purpose of the ordinance in question is to prevent discrimination between citizens on account of race or color, but if the ordinance, regardless of its meritorious purpose, has been enacted in such a manner that its provisions are so limited in its application as to make it a limited, local, or special law where a general law could have been made applicable, the ordinance is void under Art. III, Section 40(30), of the Constitution of Missouri 1945, and it is the duty of this court to apply that provision of the Constitution, regardless of the good faith of the sponsors of the enactment, or the meritorious purpose of the ordinance.

The constitutional provision provides: "The general assembly *shall not pass any local or special law* * * * (30) *where a general law can be made applicable,* and whether a general law could have been made applicable is a judicial question to be judicially determined without regard to any legislative assertion on the subject." (Italics ours.) This constitutional provision also applies to municipal corporations under home rule charters, such as Kansas City, Missouri, since Art. VI, Section 19 of the Constitution of Missouri provides that such charters shall be "consistent with and subject to the constitution and laws of the state." The ordinance in question must comply with the mentioned constitutional provision. McKaig v. Kansas City, 363 Mo. 1033, 256 S.W.2d 815, 816; Laclede Power & Light Co. v. City of St. Louis, 353 Mo.

67, 182 S.W.2d 70, 72(1); City of Springfield v. Smith, 322 Mo. 1129, 19 S.W.2d 1, 3(1); Ex parte Lerner, 281 Mo. 18, 218 S.W. 331, 333; City of St. Louis v. Atlantic Quarry & Construction Co., 244 Mo. 479, 488, 148 S.W. 948.

In the last cited case the court said: "It is illogical to suppose that, in matters affecting the security of the citizen with respect to his person and property, the municipal corporation, in its legislative capacity, should not be subject to the same restrictions as the Legislature from which it derives its powers. This question also presented itself to the people in their capacity of makers of the organic law, so that, in authorizing the charter which we are now considering; they provided * * * that it 'shall be in harmony with and subject to the Constitution and laws of the state.' The Constitution is largely devoted to the restriction of the legislative power in the granting of special privileges, and in the enactment of special and arbitrary legislation affecting the rights of the people, and we cannot harmonize with these restrictions an unlimited power to grant special privileges, and by special legislative act to discriminate between individuals of a municipality with respect to the use of their property and the conduct of their business."

We fully agree with the majority opinion insofar as it holds that: "Businesses, trades, occupations and vocations carried on within a municipal corporation are subject to reasonable regulation by the municipal corporation under its police power which may be delegated to the municipal corporation in express terms or by implication."

We further fully recognize the portions of the Charter of Kansas City, quoted in the opinion, to wit: Article 1, Sec. 1, subd. 29; Article 1, Sec. 1, subd. 57; Article 1, sec. 1, subd. 61 and Article 1, Sec. 3. We also agree with certain other portions of the opinion, to wit: " * * * Kansas City has the general power to define, prohibit and regulate acts, practices and conduct of businesses which are detrimental to the health, comfort, safety, convenience and welfare of its inhabitants as well as the specific power to license and regulate restaurants. The term 'regulate' as used in a delegation of municipal powers is one of broad import; it means generally to prescribe the manner in which a thing licensed may be conducted. * * * A grant of power to regulate a business or vocation carries with it the authority on the part of the city to exercise the police power impliedly and necessarily vested in it in order to accomplish the municipal function dele·· gated * * *"; and a "municipal ordinance, designed to prevent discrimination by reason of race or color in restaurants, bears a substantial and reasonable relation to the specific grant of power to regulate restaurants and to the health, comfort, safety, convenience and welfare of the inhabitants, of the city and is fairly referable to the police power of the municipal corporation"; and further: " 'Police power is the exercise of the sovereign right of a government to promote order, safety, health, morals, and the general welfare of society, within constitutional limits.' The police power is an essential attribute of government without which constitutional guaranties of personal and property rights would be ineffective and meaningless. In their very nature, neither the police power nor constitutional limitations can be absolute; they are necessarily relative and dependent in the complexities of modern life."

Nor do we find the ordinance in question to be "an arbitrary or unreasonable exercise of the police power of the city; hence the ordinance is not unconstitutional as being in violation of the plaintiffs' asserted rights under Art. I, Sections 2 and 10 of the Missouri Constitution to choose and contract discriminately with their customers on the basis of race and color." Our objection to the opinion is on the sole ground that the ordinance violates the mentioned specific constitutional provision.

The majority opinion quotes from Article 1, Sec. 1, subd. 57 of the Charter of

Kansas City, which authorizes the city "* * * to license, tax and regulate any and every person, firm, association, or corporation *engaged in the occupation, business, trade, pursuit, profession, calling, employment, vocation, avocation or practice of keeping, maintaining, conducting, managing, directing, operating, overseeing or superintending any * * * hotel* * * * or * * * *restaurant* * * *."* However, subd. 57 names dozens of other occupations, businesses, trades, etcetra, as to which the city possesses the same powers, such as: "Any academy, * * * airdrome, * * * amusement, amusement park, * * * apartment house, * * * athletic exhibition or contest, * * * ball alley, barbecue stand, barber shop, * * * bath house, * * * beer house, beauty parlor, * * * billiard parlor, boarding house, * * * boxing contest, * * * cattle show, college, * * * concert, * * * correspondence schools or agency, * * * dance house, dancing school or hall, * * * dog show, dramatic school, * * * dram shop, educational institute, * * * hair-dressing establishment, * * moving-picture exhibition, * * * nursery, * * * office building, * * * passenger station, * * * piano studio, pin alley, * * * pool room, * * * public garage, * * * saloon, * * * shooting gallery, shooting rack, show, skating rink, * * * sparring exhibition, * * * theatre, * * * theatrical or other exhibition; tippling house, * * * trade school or college, * * * turkish bath, * * * wine or beer garden, * * *" and many other businesses, trades and professions.

The same subdivision of Section 1, Article 1 further authorizes the city to license, tax and regulate other trades, businesses and callings, as follows: "* * * and to license, tax and regulate all occupations, businesses, trades, professions, callings, employments, vocations, avocations or pursuits, and other institutions, establishments, articles, utilities and commodities; and things not heretofore enumerated of what-

soever name or character, alike or unlike, * * *."

From the foregoing list of named and unnamed businesses, the city has selected hotels, motels and restaurants and makes it unlawful for them to discriminate on account of race or color, but discrimination as to race or color is not prohibited in any other trade, business or calling. In fact, on the face of the ordinance itself it appears that by Section 39.261 subd. (c) discrimination on account of race or color is prohibited in coffee shops, soda fountains, soft-drink and ice-cream parlors, but not in "taverns or bars." This is an arbitrary and unreasonable discrimination in view of the purpose of the ordinance.

From the face of the ordinance it appears that, considering the purpose of the ordinance and the evils sought to be corrected thereby, the city has arbitrarily and unreasonably selected hotels, motels and restaurants from the entire list of businesses, etcetra, over which it has the same control and has enacted a special and local law where a general could have been made applicable. It clearly appears that the purpose of this ordinance is not to promote, regulate or control the hotel, motel or restaurant businesses as such, or in any respect except with reference to race or color discriminations. The ordinance is not for the protection or advancement of the named businesses and the evils sought to be corrected by the ordinance are not limited or special to hotels, motels and restaurants. It is common knowledge that many other businesses unfairly discriminate on account of race or color. A city ordinance whose sole purpose is to prevent discrimination on account of race or color cannot be limited to one local or special field where a general law could be made applicable. All citizens, regardless of race or color, are entitled to equal treatment in all business establishments open to the public and all are entitled to the benefits enjoyed by other members of the public generally. Any local, special or limited ordinance which purports to pro-

hibit discrimination on account of race or color as to "accommodations, advantages, facilities or services" in one small field is unconstitutional and void.

In McKaig v. Kansas City, supra, 256 S.W.2d 815, 817(7), this court held that a city ordinance prohibiting automobile dealers from keeping their places of business open on Sundays and six national holidays was unconstitutional as a "special law" excluding from its operation all persons engaged in businesses of selling all other commodities and merchandise, except automobiles, and without any reasonable basis for such distinction.

After pointing out that "the laws of this state that prohibit work on Sunday * * are based upon a sound public policy which recognizes that rest one day in seven is for the general good of mankind," the court further said: "The ordinance before us excludes all persons engaged in the business of selling all commodities and all merchandise *except automobiles.* In other words, it *excludes* all persons engaged in the business of selling television sets, radios, phonographs, refrigerators, washing machines, electric and gas ranges and heaters, trailers, golf equipment, furniture, hardware, clothing and many other articles. * * * *There is no reasonable basis for singling out those people who are engaged in the business of selling automobiles and excluding those people who sell the above enumerated articles of merchandise who are permitted to keep open their places of business on Sundays and the six named holidays.*" (Italics ours.)  (256 S.W.2d 815, 817(7).)

The ordinance in question now before us proceeds on exactly the same basis as the ordinance in the McKaig case, since the city council *has selected hotels, motels and restaurants* for the application of an ordinance *making it illegal for them to discriminate against members of the public on account of race or color,* while excluding all other businesses, professions or callings where such discriminations are made.

"The test of a special law is the *appropriateness* of its *provisions* to the objects that it *excludes.* It is *not,* therefore, *what a law includes,* that makes it special, but what it *excludes.*" (Italics ours.)  Reals v. Courson, 349 Mo. 1193, 164 S.W.2d 306, 307; McKaig v. Kansas City, supra, 815, 817(5). Considering the subject matter of the ordinance and the evils sought to be corrected thereby, a general ordinance could have been made applicable and it was clearly unreasonable and arbitrary to *exclude* all other businesses where discriminations on account of race or color is the common practice.

In City of Springfield v. Smith, supra, 19 S.W.2d 1, a city ordinance prohibited on Sunday only the keeping "open of any theatre, playhouse, or any other place where theatrical performances, vaudeville shows or moving picture exhibitions are given or conducted," or conducting or taking part in any such performance, show or exhibition. This court pointed out that *omitted from the ordinance* was any prohibition against "the keeping open and operation of such public amusement businesses as concerts, circuses, amusement businesses as concerts, circuses, amusement parks, public halls, sparring exhibitions, wrestling exhibitions, and like public amusement businesses * * *." The court said: "Each and all of the public amusement businesses above enumerated, but omitted from the operation of the ordinance, *affect the permissible subject-matter of this legislation in very much the same way.* The keeping open and operation of each requires similar labor activities, each furnishes to the public for a consideration an opportunity for excitement and entertainment, and each is sufficiently attractive to induce large portions of the public to attend, and each is fairly and reasonably comparable with theaters, vaudeville shows, and moving picture exhibitions *in their possibilities of disturbing a day of rest. We find no reason which would justify the regulation of one in this regard which will also not apply with*

*equal force to the others. They all appear to be similarly situated with reference to the permissible subject-matter sought to be dealt with by the ordinance."* (Italics ours.)

The court further said: "We are not here so much concerned with determining how many activities which threaten to disturb *the subject-matter sought to be protected* could or might be included in the one piece of legislation, but our problem of instant concern is *whether some have been omitted* from the ordinance now involved *which* it would be clearly and unreasonable and arbitrary to omit." (Italics ours.) (19 S.W.2d 1, 4, 5.)

In Ex parte Lerner, supra, 218 S.W. 331, 333, in a case where a city ordinance prohibited solicitation of all prospective purchasers while such purchasers were on the street or sidewalk in front of the place of business of a competitor of the soliciting person, but which ordinance did not prohibit the general personal solicitation of persons for business purposes upon the streets and sidewalks was held void as being special in its terms and local in its application. The court said: "Instead of prohibiting the general personal solicitation of persons for business purposes upon the streets and sidewalks of the city, its application is limited to the prohibition of such solicitations to persons in like lines of trade in front of the store or place of business of a competitor. Such a classification is neither general in its terms as to the persons to whom it is intended to apply, or to the streets the use of which is attempted to be regulated. Certainly, if it be an ill requiring legislative supervision to regulate the solicitation of business upon the streets and highways within the limits prescribed in the ordinance, then it must follow that it is equally an ill to solicit business elsewhere upon any of the thoroughfares of commercial activity in the city. The ordinance therefore cannot be otherwise construed than as special in its terms and local in its application, contravening the constitutional provision that

'where a general law can be made applicable, no local or special law shall be enacted', * * * which salutary rule regulating legislation we have shown applies with equal force to an ordinance as well as a state law."

Since I consider the ordinance in question to be void in view of Art. III, Section 40(30) Constitution of Missouri, I would affirm the judgment.