The Honorable Kent Glasscock State Representative, 62nd District P.O. Box 37 Manhattan, Kansas 66505
The Honorable Lana Oleen State Senator, 22nd District 3000 Stagg Hill Road Manhattan, Kansas 66502
Dear Representative Glasscock and Senator Oleen:
You inquire about the portion of 1998 House Bill No. 2724 (L. 1998, Ch. 141, § 1) that amends K.S.A. 1997 Supp. 65-1423(h)(5) dealing with the requirements which must be met before scaling and coronal polishing may be performed by an unlicensed individual. The Bill states in pertinent part:
 "Nothing in this act shall apply to the following practices, acts and operations:
. . . .
 "(h) except as hereinafter limited to the performance of any dental service of any kind by any person who is not licensed under this act, if such service is performed under the supervision of a dentist licensed under this act at the office of such licensed dentist except that such nonlicensed person shall not be allowed to perform or attempt to perform the following dental operations or services:
. . . .
 "(5) a prophylaxis, except that individuals who are not licensed but who are operating under the direct supervision of a dentist may (A) coronal polish teeth as defined by rules and regulations of the board and (B) coronal scale teeth above the gum line as long as such procedure is not performed on a patient who has undergone local or general anesthesia at the time of the procedure, is undertaken by a nonlicensed person who has successfully completed necessary training for performing such dental procedure in a course of study approved by the board, which course of study is consistent with American dental association accreditation standards and includes but is not limited to adequate instruction on scaling the teeth and recognition of periodontal disease, is undertaken by a person who has met the experience requirements for performing such procedures as established by the board and such procedure is performed prior to July 1, 2001. The provisions of this part (B) of subsection (h)(5) shall expire on July 1, 2001."
You indicate that your questions derive from a concern about how certain technical terms will be defined in light of the following information, which you have provided. "Coronal" is a distinction of landmark demarcation on a tooth; "Dentine-Enamel Junction" (DEJ) is the dividing line between the root and crown of the tooth; the DEJ is 1 — 3mm within the gingival sulcus in a periodontally healthy individual, but it may be buried up to 10mm within the gingival sulcus of a seizure patient (the DEJ may also be outside the gum in cases of gingival recession); "clinical crown" is not a technical dental term but rather a lay term which describes the portion of the tooth that is visible outside of the gum irrespective of the position of the coronal demarcation.
Your first question is whether the anatomical and procedural terms used in K.S.A. 1997 Supp. 65-1423(h)(5), as amended, are to be defined by the dental profession generally, by the Kansas Dental Board (hereinafter Board), or by each dentist. We assume that your question is directed at the terms "coronal polish" and "coronal scale."
The statute authorizes unlicensed individuals operating under the direct supervision of a licensed dentist to "coronal polish teeth" as defined by rules and regulations of the Board and also authorizes such persons to "coronal scale teeth" in certain circumstances but does not specifically state how coronal scale is to be defined, other than that it shall only be performed "above the gum line." We must interpret this ambiguity by construing the provision according to well established rules of statutory construction.
It is the fundamental rule of statutory construction, to which all others are subordinate, that the purpose and intent of the Legislature governs when that intent can be ascertained from the statute.[1] The several provisions of an act, in pari materia, must be construed together with a view of reconciling and bringing them into workable harmony and giving effect to the entire statute if it is reasonably possible to do so.[2] The intent of the Legislature is clear if we look at the several provisions of the Act together and bring them into workable harmony.
The statute prohibits an unlicensed person from performing or attempting to perform any of the dental operations or services listed in the provisions (1) through (5). Subsection (h)(5) prohibits an unlicensed person from performing a prophylaxis with two exceptions. An unlicensed individual may coronal polish teeth and may coronal scale teeth with certain listed limitations. Since coronal polish and coronal scale are both included procedures of a routine prophylaxis,[3] it would be inconsistent and senseless for the Legislature to specify that the exception for coronal polish is to be defined by the Board but leave the coronal scale exception to be defined in some other manner, especially given the extensive limitations placed on the procedure in the statute.
Pursuant to the statute, an unlicensed person may coronal scale teeth above the gum line with these restrictions: 1) the person must be operating under the direct supervision of a dentist; 2) the procedure may not be performed on a patient who has undergone local or general anesthesia at the time of the procedure; 3) the unlicensed person performing the procedure must have successfully completed necessary training approved by the Board; 4) the person must have met the experience requirements established by the Board; and 5) the procedure must be performed prior to July 1, 2001. These limitations indicate that the Legislature considered coronal scale the more complicated of the two procedures and the one more likely to cause harm to the public if done by one not trained or not experienced in the procedure.[4] Therefore, it is our opinion that the Legislature intended that both terms, coronal polish and coronal scale, be subject to definition by rule and regulation of the Board charged with enforcing the Dental Practice Act and whose primary function is the protection of the public.
Your second question is whether the statute, as amended, authorizes a dental assistant to perform coronal polishing on visible areas of the tooth or to perform a prophylaxis under the direct supervision of a dentist or hygienist and, if so, on what part of the tooth.
The statute specifically states that an unlicensed person shall not perform or attempt to perform a prophylaxis but provides two exceptions to the broad prohibition. The first exception deals with coronal polishing: An unlicensed person, under the direct supervision of a dentist, not ahygienist, may coronal polish teeth as defined by rules and regulations of the Board. Therefore, in our opinion, even though coronal polishing is part of a routine prophylaxis, an unlicensed person may, under the direct supervision of a dentist, coronal polish teeth as the term is defined by rules and regulations promulgated by the Board. The second part of your question deals with whether the dental procedure may be performed on the visible areas of the tooth. The Board's regulations will address this issue in rule and regulation, and if adopted as proposed,[5] the definition will be found at K.A.R. 71-6-1(e) which defines "coronal" as "the portion of a tooth or tooth replacement visible above the gum line."
Your third question is whether the statute regulates dental assistants and, if so, under the jurisdiction of what entity. To regulate generally means to prescribe the manner in which something licensed may be conducted.[6] Dental assistants are not licensed and thus not able to perform any dental procedure in our State except under the direct supervision of and at the office of a licensed dentist.[7] An unlicensed dental assistant performs a dental procedure under the direct supervision of a licensed dentist, who is responsible and subject to regulatory discipline for the actions of the unlicensed person or dental assistant.[8] However, if regulation is meant in the broader sense of "to direct by rule or restriction,"[9] then the statute clearly regulates how an unlicensed individual, under the direct supervision of a dentist, may practice dentistry. In this regard, the Board as an administrative agency is charged with enforcing and interpreting the statute's provisions by promulgating rules and regulations to enforce the standards provided by the Legislature.[10]
Thus, in accordance with the statute, it is our opinion that dental assistants (and any unlicensed person performing any dental service of any kind)[11] are subject to the prohibitions and requirements imposed by K.S.A. 1997 Supp. 65-1423, as amended, and as such, are regulated by the Board who is charged with the law's enforcement.
Your fourth question is whether K.S.A. 1997 Supp. 65-1423, as amended, requires dental assistants to obtain specialized training, registration, or licensure from the State of Kansas. Licensure has been addressed in question three above. Regarding registration, the Board may within its discretion interpret the statute to require registration.[12] Although a registry was contemplated by the Legislature, none is required by the statute.[13] In regard to specialized training, the statute requires dental assistants to obtain specialized training in order to perform coronal scaling. Accordingly, it is our opinion that the statute requires a dental assistant to obtain specialized training in order to perform coronal scaling and while the statute does not require that unlicensed dental assistants obtain licensure, the Board may within its discretion interpret the statute to require registration.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Guen Easley Assistant Attorney General
CJS:JLM:GE:jm
[1] See, e.g., Davey v. Hedden, 260 Kan. 413, 419 (1996).
[2] See, e.g., Guardian Title Co. v. Bell, 248 Kan. 146, 151 (1991).
[3] See Attorney General Opinion No. 95-29.
[4] Minutes, House Committee on Health and Human Services, February 2, 1998; Senate Committee on Public Health and Welfare, March 10, 1998 and March 11, 1998.
[5] See K.A.R. 71-6-1 (proposed, 1998).
[6] See Marshall v. Kansas City, Mo., 355 S.W.2d 877, 882 (Mo, 1962).
[7] See K.S.A. 1997 Supp. 65-1423, as amended by L. 1998, Ch. 141, § 1.
[8] K.S.A. 1997 Supp. 65-1436(a)(5), (a)(15).
[9] Black's Law Dictionary 1156 (5th ed. 1979).
[10] Citizens' Utility Ratepayer Bd. v. State Corp. Com'n of State ofKansas, 1998 WL 110548 (Kan. 1998). (The Legislature may delegate the administrative power to enforce the law, based on the standards included in the delegation.)
[11] See K.S.A. 1997 Supp. 65-1423(h), as amended.
[12] See K.A.R. 71-6-4 (proposed 1998) (application for certification).
[13] See Minutes, Senate Committee on Public Health and Welfare, March 10, 1998.